### ORLEANS COUNTY, ADJOURNED TERM, JULY, 1828.

### *President and Fellows of Middlebury College* vs. *Joel Cheney.*

That the knowledge of the Court of the law of a neighbouring state, empowering a Justice of the Peace to take acknowledgment of deeds, may be sufficient without other proof.

That when a grantor of land, with warranty, afterwards purchases an outstanding title, that enures to the benefit of his grantee, in respect to title, and for his own benefit in discharge of his covenants.

That the acknowledgement of a deed before R. T. Judge of the Supreme Court, is good in this state.

That the description of the land in a deed, may be by numbers of lots in figures, as lot No. 54.

THIS was an action of *Ejectment* for lands in Albany, which had been tried at the Supreme Court, and exceptions taken to several decisions, which fully appear in the following case allowed by the Judge who tried the cause.

" *Ejectment* for a parcel of land with the appurtenances, lying and being in Albany, in said county, described as follows : being lot number *fifty four,* drawn to the right of *Isaac White,* original proprietor ; plea the general issue. The plaintiffs in support of the issue on their part, offered in evidence to the ‖jury the following, viz :—*First,* the copy of the record of the charter of *Lutter-loch,* marked A, dated June 26, 1782, *Isaac White* a grantee. To the reading of which the defendant objected, for that it did not sufficiently appear from the certificate of the Secretary of

state, that the original charter had $\Big\{$   Orleans, July, 1828.

ever been recorded; but the ob- $\Big\}$  *Middlebury Coll. vs. Cheney.*

jection was overruled by the court, and the instrument was read. *Second,* the copy of the deed from *Isaac White,* and twenty-nine others, to *Joshua Stanton,* marked B, dated May 25, 1795; to the reading of which the defendant objected, for that it did not appear that by the laws of *Connecticut,* a justice of the peace was authorized to take the acknowledgment of deeds; but the objection was overruled by the court, and the instrument was read. *Third,* the copy of the deed from *Joshua Stanton* to *Ira Allen* marked C,which was read,dated August 16,1803. *Fourth,* the copy of a decree of the Court of Chancery in favor of *Ira Allen* against *Joshua Stanton,* marked D, and the copy of the deed from *Ira Allen* to *Jonathan Spafford,* marked E,—decree dated June term, 1803, and deed dated April 5, 1802 : to the reading of which the defendant objected, for that *Allen* had no title to the land in question at the time of the execution of said deed, and therefore it conveyed nothing to *Spafford;* and that the deed from Stanton to *Allen,* being subsequent in point of time, the legal fee remained in *Allen,* and never had passed to said *Spafford;* but the court overruled the objection, and the said instruments were read. *Fifth,* the copy of the deed *Jona. Spafford* to *Jona.* and *Arad Hunt,* marked F; to the reading of which the defendant objected, for that it was acknowledged before *Royal Tyler,* judge of the Supreme Court. But the court overruled the objection, and the instrument was read—dated April 5, 1804. *Sixth,* the deed from *Arad Hunt* to the President and fellows of *Middlebury College,* dated May 6, 1813, marked G, and the deed from *Jona. Hunt* to the same, marked H, dated May 31, 1817 ; to the reading of both which said deeds the defendant objected, for that neither of them contained any sufficient description of the lands intended to be conveyed : but the court overruled the exception to both said deeds, and they were read. *Seventh,* the act incorporating the President and Fellows of *Middlebury College,* passed Nov. 1, 1800, and the charter of said *College,* dated Nov. 1,1800, and recorded on the ninth day of said month,which were also read. The plaintiff also gave parol testimony to the jury, tending to show that the town of *Lutterloch,*now *Albany,* has been surveyed,in fact,

TT

into lots, and that the said lots have been divided among the proprietors; these lots being drawn to each original proprietor's right—that lots numbered 41, 42, and 54 were drawn to the right of *Isaac White*; that the lands in said town are held according to this survey and division, and that the defendant was, at the commencement of this action, and still is, in possession of said lot number *fifty four*.

The defendant, to support the issue on his part, offered in evidence to the jury the deed, from *John Skinner*, collector of a road tax, laid on the said town by a special act of the legislature, passed in October 1821, to him the said defendant, marked I, which was read : whereupon it was contended by the plaintiffs, that the said deed was void and of no avail to convey the said land to the defendant, because at the time of granting the said tax, the said land belonged to said *College*; and was not liable to said tax, for that the defendant had not shown to the jury that at the time of granting said tax, the said *College* held and possessed other lands of the yearly value of two thousand dollars—and also for that said premises was land sequestered for public, pious or charitable uses. And it was contended by the defendant that the said deed was good and valid to convey said premises to him, because the plaintiffs had not shown to the jury that they did not possess other lands of the yearly value of two thousand dollars, and also for that the premises was not land sequestered for publick, pious or charitable uses.

Whereupon the court instructed the jury that if from the aforesaid evidence on the part of the plaintiffs, they found that the lands in question belonged to the said *College* at the time of granting the said tax, the said deed marked I, was not good and valid in the law to convey the said premises to the defendant, for that the said defendant had not given any evidence tending to shew that the said *College* did, at the time of granting said tax, hold or possess other lands to the yearly value of two thousand dollars; whereupon the jury returned a verdict for the plaintiffs. The several instruments before referred to, marked A, B, C, D, E, F, G, H and I, together with the said acts, incorporating the President and Fellows of *Middlebury College*, and the said charter of said *College*, are made a part of this case. And to the several decisions of the court aforesaid the defendant excepts.

*Argument for the defendant.*—⎰    Orleans, July, 1828.

It is contended by the defendant, ⎱ *Middlebury Coll.* vs. *Chency.* that a title obtained by a grantor subsequent to his having conveyed a defective title, has never been adjudged to enure to the benefit of his grantee, unless it were where the grantor was liable upon his covenants to make his title good, seeking at the same time to recover against his grantee in an action of ejectment, and then only as an estoppel or reubuttal, that is, the right of action shall rebut the right of entry. Hence *Coke Lit.* 265, *a.* says, "If a son release a future right in the life of his father, the release " is void, because he had no right at the time of the release made, " but all the right was at that time in the father; but after the de- " cease of the father, the son shall enter into the land against his " own release."—*Shep. Touch.* 243.—*Id.* 509. If *Ira Allen's* deed of 5th of April, 1802, to *Jonathan Spafford,* had contained no covenants for title, any person claiming under *Allen* by con- veyance, subsequent to his deed from *Stanton,* the 16th of Au- gust, 1803, would hold the lands; and though there were cove- nants in *Allen's* deed to *Spafford*—yet it does not alter the case, because, the present defendant is not heir to *Allen's* estate, nor do they hold under *Allen*; therefore cannot be affected by the covenants of his deed, for *Coke* in the next paragraph says, "For " if there be a warranty annexed to the release, then the son " shall be barred; for though the release cannot bar the right " for the cause aforesaid, yet the warranty may rebut, and bar " him and his heirs of a future right which was not in him at the " time—and the reason (which in all cases is to be sought out) " wherefore a warranty, being a covenant real, should bar a future " right, is for avoiding circuity of action, (which is not favored in " law) as [otherwise] he that made the warranty should [would] " recover against the *terre*-tenant, and he, by force of the warranty, " to have as much in value against the same person." If the rea- son here assigned by *Coke* is the true reason why the covenan- ter shall not be permitted to recover against the covenants in his own deed, and no other can be assigned, it follows, that the sub- ject of the covenants, barring the right of the defendant to dis- pute the validity of title conveyed by *Allen* to *Spafford,* is at rest, the defendants, not holding under *Allen,* but by title adverse, and

Orleans, July 1828.

Middlebury Coll. vs. Cheney.

in no wise affected by his covenants. Can there be a case found in which, by the English laws, the covenants of the grantor were adjudged to be an estoppel to the recovery of his assignee. Before the *Satute of 6th Edward I.* called the *Statute of Gloucester*, all warranties which descended to them who were heirs to those who made the warranties, were bars to the same heirs to demand any lands or tenements against the warranties, except the warranties which commenced with disseizen : but, by the provisions of that statute, it was no bar to an heir in tail, unless assets came to his hands from the warranty.—*Co. Lit. sec.* 697—[365, a.] It is a novelty,indeed, that the assigns are to be bound by the covenants that their grantor might have inserted in a previous deed to a stranger, but a very proper thing that the heirs of the covenantor should ; because the claim, in case of recovery, is assets, with which the heir would be bound to discharge the covenants. But if the son let an estate to his father for life, or term of years, and the father by deed conveys to another in fee, and binds himself and heirs by covenant to warrant, and then dies, the warranty shall not bind the son, because the warranty commenced by disseizen. *Co. Lit. s.* 698. The remark incidentally made by *Judge Thompson* in the case of *Jackson ex dem. Benson* vs. *Matadorf et al.* 11 *Johsnon* 97, was founded upon the same principle.—*Ben. Benson,*lessor of the plaintiff, had formerly given a deed to *Kesiah,* daughter to *Ambrose Benson,* in trust for *Ambrose* ; and *Benjamin* afterwards executed another deed direct to *Ambrose,* and the last, " which" says the judge " if it contained covenants of warranty, would pass any title subsequently acquired by the grantor," citing the same authority, (*Coke* 265 a.) Aside from this dictum gratuitiously thrown in, the case was decided upon the grounds that the plaintiffs right was a resulting trust to *Ambrose Benson,* under whom the defendant held. The case in 13 *Johnson,* 316, *Jackson ex dem. Stevens* vs. *Stevens,*is reported with many typographical errors,and does not warrant the reporter in his marginal note. The point decided was that the plaintiff was estopped from recovering against his own prior deed of the premises to the assignee of the defendant. The principle contended for by the plaintiffs does not apply in this case; this is not a ques-

tion between the grantor and grant- ⎰ . Orleans, July 1828,
ee; or their assigns, but between ⎱ *Middlebury .Coll.* vs. *Cheney.*
parties claiming by adverse titles. It is a case frequently.
occurring, and as frequently made the subject of litigation in
courts of chancery, which circumstance (that is, of jurisdiction)
sufficiently evinces that courts of law cannot right the wrong—they
cannot reach the evil complained of.—*Sugden*,523. The grantor
conveys no more than he enjoys, or has a right to enjoy ; and if
he possesses nothing in fact,or in estimation of law, at the delivery
of his deed, he conveys nothing, and if he executes covenants in
his deed, those are broken—are choses in action, inserted for the
express purpose of protecting the purchaser against the loss of his
purchase money. And if the grantor afterwards buys in the title,
he must reconvey before the grantee derives a benefit from it,
which can be compelled only by a decree in the alternative, *to*
*deed or pay the value.* I have not noticed the decree in chance-
ry : it is not material in this case ; nor is the question whether *Al-*
*len* could, or could not, by his deed of the 5th April, 1802, con-
vey an equitable title to *Spafford.* One thing is certain, that by
that deed, he did not convey a legal title, and his equity against
*Stanton* was of that description, that a court of chancery could
not, by a sovereign exercise of its powers, enforce it—unlike an
injunction upon the operation or use of a deed, whereby a title
would fall to another person, they could decree only, that *Stan-*
*ton* should either deed to *Allen*, or pay a certain sum of money by
a limited time. Suppose *Stanton* had elected to do neither,and
upon further application to the court, an execution had issued,and
the money paid ; will it be pretended that *Spafford* could have
drawn the same sum out of *Allen's* hands upon a general count for
money had and received ? If not, then where is the equity con-
veyed to him by *Allen ?*

The deed from *Spafford* to *Jonathan* and *Arad Hunt* conveyed
to them no title, it not having been acknowledged as the law directs.
The statute requires that a deed,conveying lands, shall be acknowl-
edged before a justice of the peace. The reason why the legis-
lature saw fit to direct that justices of the peace should discharge that
duty in particular, is not necessary to be inquired into ; it is sufficient
that the law has appointed that that officer only should perform

Orleans, July, 1828.

Middlebury Coll. vs. Cheney.

that particular duty, and to act in that capacity, to have the ackowledgment of a deed valid. It is admitted that had the letter of the law extended to *judges of the supreme and county courts, or justices of the peace,* it would have been more convenient. But it is said that a Judge of the Supreme Court is *ex officio* justice of the peace. There are other instances of two offices being united by the same appointment. Judge of the county and justice of the peace ; clerk of the Supreme and County Court and notaries public ; high bailiff and sheriff brevet. And yet, in the discharge of the duties of each office, it is essentially necessary that their official signature should characterize the office in which they are officiating. For instance, each clerk of the Supreme or County Courts, are by law constituted *notaries public;* but should either of said clerks sign an execution as notaries public, it is apprehended that it would be void. Nor would signing as clerk of the court answer any beneficial purpose where a notarial seal should be required. It follows that it is not the man, but the character in which he acts, that gives validity to his doings. And though it may be said that a Judge of the Supreme Court is also a justice of peace, *ex officio,* yet it was a Judge of the Supreme Court, who took the acknowledgment of *Spafford's* deed to the *Hunts,* and not a justice of the peace. A writ of error signed *Royal Tyler,* justice of the peace, would hardly operate as a supercedeas. A Judge of the Supreme Court, as justice of the peace, may hear and determine causes within the jurisdiction of a justice, but in issuing execution he must sign as justice of the peace, and not as Judge of the Supreme Court. Judges of the County Court are justices of the peace, *ex officio,* and though one Judge may in some cases try causes, yet, as County Court, he cannot hear, try, &c. where a justice of peace hath jurisdiction; nor as justice of peace, can he hear, try, &c. where the County Court hath jurisdiction ; though it be the same man, yet as Judge of the Supreme or County Court, he cannot take jurisdiction of the same subject matter, that he might as justice of the peace ; it being the character in which he acts that determines his powers and duties.

Again, when two public offices are united in the same man, it is perfectly immaterial whether it was by two appointments, or

whether one was the legal conse-   Orleans, July, 1828.
quence of the other, in as much as   *Middlebury Coll.* vs. *Cheney.*
after they are appointed, the duties are all the same, and community are bound at their peril to know all the public officers of the government: it follows, that if it be the person acting intstead of the character in which he acts, that gives legality to his proceedings, it would be immaterial which official signature be affixed to his name, as it would be the same man in either case; and *Benjamin F. Deming* may grant letter of administration, styling himself Commissioner of Goal Delivery; both appointments being made by the Legislature, and united in him.

Suppose *Royal Tyler*, in certifying the acknowledgement, had not styled himself Judge or Justice, it would most manifestly have been invalid; and yet, in this case, there is as entire a want of that official signature which the law points out.     Let a Judge of the county court sign a writ as Justice of the Peace, returnable into the county court, would it be contended that that writ might be served out of the county, and the service be valid? As Justice of the Peace, he is known as a ministerial officer, as in the acknowledgement of deeds, and in taking depositions; but as Judge, is, in no case, a ministerial officer—his acts, if legal, are all Judicial.

As to the objection to the deed from *Jonathan Hunt* to the plaintiffs, dated 6th May, 1813.—It has always been considered necessary to observe certain rules in conveyancing.   From time immemorial, it has been held that a deed must be *written* on *parchment* or *paper*. *Shepherd* in his *Touchstone, p.* 54, observes, " To the making of every good deed, containing any agreement, these things are necessary, that is, that it be written on parchment or paper, and that the agreement be legally and formally set down, and be sufficient in law for the composition and frame of the words"; so in *Coke, (*171, *b.)* every deed must be in writing. But it may be written in any language, French, Latin, Text, Court, or Roman hand.—*Shep. Touch.* 54.—It is believed that hieroglyphics cannot be used in conveyancing, though their meaning be as definitely understood as are figures; in truth, figures are hieroglyphics, known by the name of characters.—*Johns. Lex.*—The reason assigned by commentators, why deeds should

Orleans, July, 1828.

Middlebury Coll. vs. Cheney.

be written on parchment or paper, and written in some known language, is to give durability to the instrument, and security against alteration, (2 *Black. Com.* 297.) a security which characters or figures do not afford.     There can be no better method devised for the security of parties giving and receiving conveyances, than that already pointed out by law.     And it would, moreover, be dangerous, or at least inexpedient, to make inroads upon a principle so well established and so long practised upon.     Though the deed from *Jonathan Hunt* to plaintiffs of 6th May, 1813, has the usual recital of the subject matter of which the parties were about to contract, yet in the description, there is nothing which, though taken in connection with the intention of the parties, can be understood to refer to lands.     No. 12, may mean one thing to one man, and another thing to others.     The description of land in a deed ought to be so definite and certain, as that *ejectment* will lie, or a writ of possession may be served, described in the same manner.     Would it be a sufficient description in *ejectment*, saying, " to wit, No. 12."     Figures are not to be recognized in law as any part of a deed, and if they were accompanied by no word or words to aid or qualify their meaning, must certainly be adjudged too vague to convey a title.

It is contended by the defendant that the deed from *John Skinner* to him, of the land in question, was improperly rejected.     By the general laws of the state, all lands are taxable, except those which are exempt by general or special reservation.     If the property of *Middlebury College* is exempt, it is only in a limited degree ; a privilege upon condition ; and they must shew themselves entitled to the privilege in order to enjoy it.     If a defendant pleads his privilege in court, he is bound to support his plea with proof, and not call upon the adverse party to shew him not entitled to it.     This is one of those cases where it is more proper that a fact positive in its nature, shown for the purpose of establishing a negative, should be made out by the party claiming the benefit of the negative, (to wit, the plaintiff in this case,) than that the defendant should be called on to make out the same fact, the evidence being in possession of the plaintiff and no possible method of drawing it

out. The plaintiffs have said their 〈 Orleans, July, 1828.
books were open for inspection; 〈 *Middlebury Coll.* vs. *Cheney*,
be it so : who keeps them ? where is their office ? who certifies
copies ? what process in law to compel a party to furnish evidence
against himself ? A bill of discovery might be filed ; but would the
court require it, and the plaintiffs have the evidence in their pock-
et ? The plaintiffs support their objection to the deed by shewing
their corporate charter, authorizing them to hold real estate, and
a conveyance of the land in question ; then a special privilege to
*hold lands, &c. free of taxation,* to the yearly value of $2000.
This clause of the statute presents but one proposition, and it is
believed the plaintiffs must shew the extent of their possessions
or profits, in order to have the privilege attach at all; and it is more
reasonable that they should shew this, as they have it in
their power, and the defendants have not; and it was so decided in
*Watson* vs. *Hale*, 2 *Saund.* 181, c. A plaintiff sueing for having his last
cow attached, must shew it to be such. We, however, do not be-
lieve that the lands in question are freed from taxation, by the
fact of their being deeded to *Middlebury College*; for though we
admit the right which the state had, at the time of granting the
charter, to make a reservation to *public &c. uses,* yet after a town
is settled and organized, no portion of the lands can be freed
from taxation by an act of the legislature, without infringing upon
the rights and privileges of those who had made their purchase, and
commenced their improvements, before such exemption attached ;
for in this, as well as in like cases, the burthen of taxes, upon the
taxable lands in the town, is increased in the same proportion as
the quantity of exempted lands shall be augmented.—5 *Whea.*
307, *Loughborough* vs. *Blake.*

*Argument for the plaintiffs.* 1. Defendant's first objection to
copy of charter of *Lutterloch* (now *Albany,*) is groundless, as it
does appear from the certificate of the secretary of state, that
said charter is of record in said office.

2. Defendant objects to deed from *Isaac White,* and twenty-
nine others, to *Joshua Stanton*—acknowledged before a justice of
peace in *Connecticut.* That a Justice of Peace in *Connecticut*
has authority, or is authorized to take the acknowledgment of
deeds in that state, is a matter of notoriety, and might be proved

VV

by witnesses. And a deed thus ac-knowledged is *prima facie* evidence, and good until the contrary be shown. But see *Swift's Digest, p. 124.*

3. Copy of deed from *Joshua Stanton* to *Ira Allen*--not objected to.

4. Copy of the decree of the Court of Chancery in favor of *Ira Allen* against *Joshua Stanton*—and copy of deed from *Ira Allen* to *Jonathan Spafford.*—Defendant contends that the deed from *Ira Allen* to *Jonathan Spafford,* dated April 5, 1802, conveyed no title to *Spafford,* for that the deed from *Stanton* to *Allen* was subsequent in point of time, (viz. 16th August 1803). In answer to this objection, the deed from *Allen* to *Spafford* is a warrantee deed, with all the usual covenants of warranty and seizen, warranting and defending the premises to said *Spafford* and his heirs and assigns forever. If the deed from *Allen* to *Spafford* had been a quit-claim, or release only, of the legal interest said *Allen* then possessed, a question might have arisen with respect to the claim he (*Allen,*) afterwards obtained by virtue of his deed from *Stanton.* But no one will contend but that any title subsequently purchased in by a grantor, by a deed of warranty, enures to such precedent grantee. But in the present case, the equitable title was in *Allen,* as appears by said copy of the decree of the Court of Chancery, which bill in Chancery was pending at the time of the date of said deed from *Allen* to *Spafford.* And that the deed from *Stanton* to *Allen,* was only perfecting the legal title in *Allen* and his assigns, of what they already had the equitable title.

5. That the deed from *Spafford* to *Jonathan* and *Arad Hunt* was not legal, because it was acknowledged before *Royal Tyler,* Judge of the supreme court.—This was the only title he could assume or annex to his name, whereby he could be known as a justice of the peace. Judge of the supreme court is the popular name, and the only one by which he was christened by the Legislature. And thereby being justice of the peace *ex officio,* by virtue of the Constitution—without that, he was not a justice of the peace.

6. To the deed from *Arad Hunt* to the *College,* and to the deed

from *Jonathan Hunt* to the *Col-*   <span style="float:right">Orleans, July, 1828.</span>
*lege*, for want of sufficient descrip-   *Middlebury Coll.* vs. *Cheney.*
tion of the lands intended to be conveyed.—The deed from
*Arad Hunt* to the *College* is a quit-claim deed of all the title and
interest which he had to a tract of land in *Lutterloch*, (now *Alba-
ny*,) which he possessed by virtue of a deed from *Spafford* to him
and *Jonathan Hunt*, to hold as tenants in common, and not as joint
tenants—reference being particularly made in said *Arad Hunt's*
deed to the *College* to the deed from *Spafford* to *Hunts*, for a
particular description of the premises.    And in said deed from
*Spafford* to *Hunts*, referred to as aforesaid, the original proprietor's
name, and the numbers of the lots conveyed, are particularly set
forth in said deed.    And in the deed from *Jonathan Hunt* to the
*College*, (which is but a deed of division of lands held in common
by him and the *College*,) the number of the lots therein deeded to
the *College* are set forth in said deed, and are part of the same
lots of land deeded by *Spafford* to said *Hunts*, by his deed to them
which reference to the warrantee deed from *Spafford*, is deemed
to be all the description that could have been given in said quit-
claim deeds from said *Hunts* to the *College*.

7. The act incorporating the President and Fellows of *Mid-
dlebury College*, passed Nov. 1, 1800, and the charter of said
*College* dated Nov. 1, 1800, were read, and not objected to.—
Nor did the defendant object to the evidence given for the plain-
tiffs relative to the draft, survey, and division of said town of *Al-
bany*—or that said lot No. 54 was drawn to *Isaac White*, or that
defendant was in possession of said lot, &c.    The deed from
*John Skinner*, collector of a road tax, granted by the Legislature
in Oct. 1821, which was offered and read in defence, was void,
and of no avail to defeat the plaintiffs' title : because, at the time
of granting said tax, the land in question did belong to said *Col-
lege*, and was not liable to be taxed, as will appear from the act
incorporating the President and Fellows of said *College*—For
that at the time of granting said tax, said *College* did not hold or
possess other lands of the yearly value of $2000—and also that
said land was sequestered to public, pious or charitable uses.—
And there was no error in the court in permitting said evidence to
go to the jury—or in the charge of the court to the jury.

Orleans, July, 1828. } This cause was argued at the *Middlebury Coll.* vs. *Cheney.* } March Term of this court in 1827, before HUTCHINSON and ROYCE, justices, and a full opinion then expressed in affirmance of the verdict. But, on the request of the defendant's counsel, urging that further testimony might be adduced to make the case clear for the defendant, on the subject of the vendue title, which was thought unnecessary on the former trial ; the court considering that the other causes were, by rule, entered of record, to abide the event of this, omitted to enter the judgment at that time, and gave the defendant leave to move for a new trial on the ground of surprise ; both parties to procure and file such affidavits as they should think best in reference to the question of surprise. And now at this term, no affidavits nor new motion having been filed by the defendant, and the plaintiffs having filed several affidavits, showing that they have never held lands to the yearly value of two thousand dollars, the cause was again argued upon the original exceptions, before HUTCHINSON and TURNER, justices, both of whom expressed their opinions and their reasons for the same *ore tenus*, during the term, in affirmance of the decisions on trial.

HUTCHINSON, J. delivered the opinion of the court. The first exception taken on trial, with regard to the reading of the copy of the charter, is now abandoned by the counsel.

The objection to the deed from *Isaac White*, and twenty-nine others, was,that it appears to have been acknowledged before a justice of peace of the State of *Connecticut*, and no evidence was adduced to show that in that state, a justice had power to take acknowment of deeds. This objection was overruled. The court possess sufficient knowledge of the laws of *Connecticut* to admit the deed without further proof upon that point. Very many of the ancient deeds of land in this state were acknowledged in that state before magistrates, and are frequently read in our courts. That was a question to the court, and any testimony must have been addressed to the court. And they needed none to a fact so fully known.

3d and 4th. The admission of the deed from *Stanton* to *Allen*, and the decree *Allen* against *Stanton*, and the deed from *Allen* to *Spafford.*—The objection to all these is, that they form

no title in *Allen* that enabled him $\Big\{$     Orleans, July, 1828.
to convey to *Spafford;* of course, $\Big/$ *Middlebury Coll.* vs. *Cheney.*
*Spafford* could convey nothing to the *Hunts*, under whom the plaintiffs claim: that is, *Allen*, having conveyed to *Spafford*, April 5, 1802, when he had in himself no title. The title of *Spafford* is not perfected by the decree of chancery, and the deed from *Stanton* to *Allen*, in the year 1803. We find, on inspection of *Allen's* deed to *Spafford*, that it contains the usual covenants of warranty. Hence his after-purchase enures to the benefit of *Spafford*. This is well settled law. It is salutary that such should be the law. What a farce it would seem for *Allen* to recover the lands of *Spafford*, because he has now a title which he had not when he conveyed to *Spafford*, and then *Spafford* recover of *Allen* the full value of the lands, and, perhaps, extra damages, on the covenants of *Allen's* deed, which assured *Spafford* at the time, that *Allen* had a title and was well seized, and would warrant and defend the premises. The law abhors such circuity of action. A man may, by mistake, convey land he does not own. His grantee is made good, if the title is obtained and used in confirmation of that title, before any eviction or ouster. It appears in this case that *Allen*, when he conveyed to *Spafford*, had such an equitable claim to the land, as enabled him, by a bill in chancery, then pending, to compel *Stanton* to confirm his title. When this was accomplished, the title passed from *Allen* to *Spafford*, by operation of law, and in discharge of the covenants of *Allen's* deed to *Spafford*.

If, before this, *Spafford* had sued upon these covenants, and the suit was yet pending, after this he could recover only nominal damages. A suit brought by *Spafford*, after this, would be barred such a perfecting of title in *Allen*. The breach of the covenants would thereby be healed. We now speak upon supposition that *Spafford* sustained no special damage by eviction, or otherwise, while the title was in *Stanton*. The objection to these papers is also overruled.

The deed from *Spafford* to the two *Hunts* is objected to, because, the acknowledgment was taken before *Royal Tyler*, Judge of the Supreme Court ; whereas, if he took the acknowledgment, he ought to have certified as a justice of the peace.

Orleans, July, 1828.

*Middlebury, Coll. vs. Cheney.*

The constitution of this state makes every Judge of the Supreme Court, *ex officio,* justice of the peace, throughout the state. Possibly the better course for them would be, to sign in that capacity in which they act. But, when such a Judge does an act which should be done as justice of the peace, and he signs as Judge of the Supreme Court, that, *ex vi termini,* carries with it justice of the peace also.' Yet not so, should he sign as justice of the peace, what should be done as Judge; for it is not included in the term. The deed in question was sufficiently acknowledged, and correctly admitted in evidence.

The objection to the deed from *Arad Hunt* to the plaintiffs, and the deed from *Jonathan Hunt* to the plaintiffs, is, the want of a sufficient description of the premises conveyed. The objection as to one, is now abandoned by counsel. The description in the other is, " certain tracts and pieces of land, numbered 42, 44," &c. It appears by the case that the township had been surveyed into lots, and the lots numbered, and the division among the proprietors was made by drawing the numbers of lots, as pointed out by the statute. A conveyance of lands, so surveyed and numbered and divided, may be made by numbers of the lots; and the different terms, lots or pieces, would not affect the title. It is more safe to give a more full description, and write out the numbers at length, through fear of misreading figures. But, when there is no dispute about the figures, and all read them alike, they answer the purpose in a conveyance. These deeds were correctly admitted.

The only remaining question arises upon the exclusion of the vendue deed, offered by the defendant, or the virtual exclusion of it, by requiring proof on the part of the defendant, that the plaintiffs, at the period of the tax, held lands of the yearly value of two thousand dollars; the amount they might hold by their charter, free of taxation. Under this head two questions are raised. 1. Whether these lands are taxable under their circumstances ? and 2dly. If not, on whom the burthen of proof lies in the use of this vendue deed ?

The statute, laying the tax, lays it upon all the lands in the town, except lands sequestered to public, pious, and charitable uses.

Now, it is contended that this means     Orleans, July 1828, sequestered by charter, as some *Middlebury Coll.* vs. *Cheney.* lands are in every charter in the state. But we see no sufficient reason thus to confine the expression. The legislature might, in the statute, have said, sequestered by charter, or any other expression they saw fit to use. But they have excepted what was thus sequestered. That is broad enough to include all methods of sequestering that are authorized by law. And we think the better construction is, to extend the exception to all that was, in a legal sense, sequestered to those uses, at the date of the statute assessing the tax.

Now we entertain no doubt, but that a conveyance to plaintiffs for the use of the *College*, was a public use. It is in every sense public. No individual has any interest in it but what is common to others. Further, if the plaintiffs were capable of taking to the use of the College, the conveyance of the land, by Messrs. *Arad* and *Jona. Hunt*, passed the title effectually from them, and vested the same in the plaintiffs for the use of the College ; that is, sequestered it to a public use. And further, if the plaintiffs did not already hold lands of the yearly value of $2000, they were capable of taking, and the sequestration had become complete before the tax existed, and, of course, come within the exception of the statute. After the affidavits now produced by the plaintiffs, and none produced by the defendant, though a whole vacation has been given him for that purpose, we must treat, as beyond dispute, the fact that the plaintiffs had not lands of the yearly value of $2000, at the time the tax was laid. The conclusion is irresistable, that the lands were freed from taxation, and were not liable to the tax in question, and could not be divested from the plaintiffs by the vendue deed in question. Having arrived at this conclusion, it would be of no use to the defendant to grant him a new trial, even if the decision at the former trial was wrong, and the burthen of proof was not on him; for we now must be convinced that he has no proof that would aid him in that respect. We further perceive that the whole cause has been decided correctly : that is, the verdict is correct. In such a case a new trial is not granted without some necessity forced upon the court by some evidently incorrect decision on the trial.

Orleans, July 1828.

*Middlebury Coll.* vs. *Cheney.*

There is now no importance to the other question, on whom the burthen of proof lay, as to the yearly value of the lands held by the plaintiffs? This is of no consequence, while there is no proof favorable to the defendant. But it is urged that the fact lay within the knowledge and in the power of the plaintiffs, and not of defendant. And, further, that if the plaintiffs would claim an exemption from a general tax, they must show themselves within the exceptions of the statute.

The facts lay within the knowledge of the plaintiffs more than of the defendant; but the defendant might claim inspection of the records of the corporation, or take the testimony of the clerk; and they could find no trouble from their want of power to obtain the proof that was thus in the knowledge of the plaintiffs. This question must not be determined wholly by the affirmative or negative character of the testimony wanted; but more from the circumstance, who needs it to make out his case. He must produce it, whether it be affirmative or negative. For instance, if the defendant with his vendue deed showed a tax fastened by the statute to all the land in town; this would make him a *prima facie* case, and throw upon the plaintiffs the necessity of proving whatever would discharge their lands from the tax. In this case the defendant shows a tax that never was attached to any land that was sequestered to public, pious or charitable uses : he, therefore, should produce testimony to show, *prima facie* at least, that this land was not so sequestered. Showing a tax, which might or might not affect the land, does not make out his defence. He must show one that does so affect it. Then he will succeed, unless his *prima facie* showing is done away by the plaintiffs. The decision was correct requiring this *prima facie* evidence to be produced by the defendant. Let judgment be entered for the plaintiffs, according to the verdict.

*Paddock* and *Fletcher*, for defendant.

*Young*, *Prentiss* and *Starr*, for plaintiffs.