JOHN M. KING
*v.*
MYRON P. BUSH, and GEORGE HOWARD.

1. EVIDENCE — *alteration of instruments.* After the maturity of a note, it was presented to the maker for payment, and its correctness admitted: *Held,* to be evidence that an alteration appearing upon the face of the note was made previous to its execution, or, if afterwards, that it was done with the maker's consent.

2. SAME — *of payment.* A written direction by a third person to the payees of a note, to pay the same out of the proceeds of certain property in the hands of the payees belonging to such third person, is no evidence of the payment of the note, unless it appears that the request had been complied with.

APPEAL from the Superior Court of Chicago; Hon. VAN H. HIGGINS, Judge, presiding. ·

This was an action of assumpsit commenced in the Superior Court of Chicago by the appellees against the appellant.

The cause came on for trial at the January term, 1862.

Upon the trial, the plaintiffs below offered in evidence, a note made by the defendant, of which the following is a copy:

"$349$\frac{52}{100}$.        OTTAWA, ILL., June 26, 1860.

Four months after date, I promise to pay to the order of Bush & Howard, three hundred and forty-nine $\frac{52}{100}$ dollars at their office in Buffalo, N. Y., value received.

JNO. M. KING."

Upon the production of the note, it appeared that there had been an alteration of the amount, changing the number of cents. The defendant below objected to the admission of the note as evidence, for the reason that it appeared to have been altered.

The plaintiffs, to explain said alteration, called *Isaac Bush*, who testified that he called upon the defendant in March last and presented this note. It was the same then in all respects as it appears now, and the account annexed to the declaration. The defendant said he thought the note had been paid. He referred to his book and said that the amount on the note and account was right, except a credit of $2 for exchange, which he knew nothing about, but that it was good; that he could not pay it then, but was worth the amount.

Upon cross-examination, the witness Bush stated: "The defendant saw the note when I presented it. I can't say positively whether or not he took it in his hand; I think he did. I laid it upon the counter before him; he was on one side of the counter, and I was on the other. I saw him look at it. I did not call his attention to the alterations, and don't know whether he knew of them or not."

Whereupon the court overruled the objection to the note, and admitted it in evidence. Defendant excepted.

The defendant below then called as a witness, *Wendell R. King*, the brother of the defendant, who testified that the defendant sent him hides to Chicago to pay the note.

The defendant then offered in evidence the following letters written by the witness to the plaintiffs, Bush & Howard:

" MESSRS. BUSH & HOWARD, Buffalo, N. Y. :

"The lot of 120 country hides were bundles containing calf skins, and had one knot in the string. I would say, open all of that lot before weighing, as they belong to another party. I hope to have accounts of the entire, soon. If these are desirable, I can make you further shipments.

WENDELL R. KING."

"CHICAGO, Oct. 12th, 1860.

"MESSRS. BUSH & HOWARD, Buffalo, N. Y.:

"I hope you will be able to dispose of the 777 hides by 29th inst. I wish to pay John M. King's note with the proceeds due you at that time, for $349.52. Other dealers in your city report the market active. I leave it entirely with you as to the propriety of sending them to N. Y. Kease and Pearsall are a good house to ship to, if you have no preference.                    WENDELL R. KING."

"CHICAGO, Oct. 20th.

"MESSRS. BUSH & HOWARD, Buffalo, N. Y.:

"Your letter of the 18th is in, and noted. My letters from N. Y., same date, report sales of some of my hides at 9c. cash, and $9\frac{1}{4}$ at 6 m. In view of these facts I would say, you may take the entire lot at 8c. net, as you propose in your letter. There were several bundles of calf in the 120 lot that should sell for a higher price.     WENDELL R. KING."

"CHICAGO, Nov. 3rd, 1860.

"MESSRS. BUSH & HOWARD, Buffalo, N. Y.:

"On the 11th day of Sept. I sent you 897 hides, green salted, to sell for my Acc. Since then I have sent to New York 3,100, that have been sold from $8\frac{3}{4}$ to $9\frac{1}{4}$c. To-day I received a telegraph from you, for which I paid $1.80, which amount you may place to my credit. I will not submit to these hides being sold now at panic prices. The hides are worth all I drawed for, and the amount of J. M. King's note, $349.52, which amounts they are intended to pay. When they are sold at decent prices and fall short of balance I will remit.

WENDELL R. KING"

To the introduction of which letters in evidence, the plaintiffs objected. The court sustained the objection, and the defendant excepted.

The witness, Wendell R. King, further testified, that "the plaintiffs never requested me to pay this note and account. Hides were worth in Buffalo on the 12th of October, 8 to $8\frac{1}{4}$

cents per pound. If my hides had been sold at that time they would have brought enough to pay all advances and this note, and left me a margin beside. I don't know what they did with them. Bush, the witness, called on me to pay this note and account in March, 1861. The hides I sent were sold in June, 1861, at about 5 to 5½ cents per pound. I did not receive any reply from the plaintiffs to my letter of October 18th until November 23rd.

"Before these hides were sent, about the 7th of September, 1861, I had a talk with Howard, one of the plaintiffs. He said he would allow me 8 cents for hides delivered in Buffalo, and would dispose of light hides which he could not use for 8 to 8½ cents, and would pay my draft to 6½ cents a pound on shipments. Two-thirds or three-fourths of the hides I sent were such as he could use and had agreed to take. He found fault with the hides and would not take them, and then I directed him to dispose of them."

On behalf of the plaintiffs, the court gave to the jury the following instructions:

1. If the jury believe, from the evidence, that the defendant, John M. King, admitted the note in question to be correct, after the alteration, and when it was presented to him by the witness, then the jury would be justified in finding for the plaintiffs on said note, if they believe, from the evidence, that the alteration was honestly made by the express or implied consent of the maker.

2. If the jury believe, from the evidence, that the alteration was made at the time the note was made, and before its delivery, then they must find for the plaintiffs on said note, unless the jury believe the note has been paid.

The jury rendered a verdict for the plaintiffs for the sum of $494.52, upon which judgment was entered, and the defendant appealed to this court.

Messrs. GLOVER, COOK & CAMPBELL, for Appellant.

Messrs. ELDRIDGE & TOURTELLOTTE, for Appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The evidence shows that the note, as it now appears, was presented to appellant, and he admitted it to be correct. This is evidence that the alteration was made previous to its execution, or, if afterwards, that it was done with his consent. If it was unauthorized, it is not probable that he would have admitted its correctness. He cannot be presumed to have declared that the amount was correct, unless it was true. Men are not usually so reckless of their interests as to make such admissions, when their rights are thereby injuriously affected. The instruction given to the jury upon this evidence was therefore correct.

It is insisted that a portion of the proceeds of the sale of W. R. King's hides, sufficient to satisfy this note, had been appropriated by him for that purpose. It appears that appellant trusted to his brother to pay the note, and that he agreed to do so, but there is no evidence that such payment was ever made. It seems that W. R. King directed appellees, by letter, to pay the note, out of the proceeds of his hides in their hands for sale. His letters to them were therefore irrelevant, unless it had appeared that the request had been complied with, and for that reason they were properly rejected as evidence. These letters only showed that a dispute existed between W. R. King and appellees as to whether they had sold the hides for a proper price, or had accounted correctly to him for the proceeds.

Had the letters contained anything tending to show that appellees regarded this note as paid, then they would have been proper evidence. But an order from W. R. King to apply a sufficient portion of the money arising from a sale of the hides, did not discharge the note, or give appellant a right to sue for and recover the money from appellees. If they sold the hides for less than the market price, or have failed to account for any portion of the money, that in nowise concerns appellant. That is a question between W. R. King and them, and it is for them to adjust. If appellant furnished hides to

W. R. King to ship, they were mixed with his own, and shipped in his name, and went into his account with appellees. There is no evidence in this record that they ever knew that any part of the hides belonged to appellant. If the proceeds of the hides were applied to the payment of W. R. King's note, no reason is perceived why it should also be applied to the payment of this note. So far as we can see from this record, appellees are in no way accountable to appellant for any portion of the money arising from the sale of the hides. Their liability, if any exists, is to W. R. King, and not to appellant.

We perceive no error in this record, and the judgment must be affirmed.            *Judgment affirmed.*