Hon. JAMES BARRETT,
Hon. ASAHEL PECK,
Hon. WILLIAM C. WILSON,
Hon. JOHN PROUT,
} ASSISTANT JUDGES.

---

## THOMAS H. CARBEE *v.* WILLIAM HOPKINS.

*Vendue Sale. Taxes. Town Clerk. Record. Certificate. Executor. Deed. Estoppel. Construction.*

Where at the end of a record of the proceedings of a tax-sale of land, the town clerk affixed a certificate as follows:

"Received for record and recorded and examined April 7, 1840.
 Attest, JOHN DODGE, Town Clerk;"

it was *held* that this certificate referred and applied to the entire record, the proceedings and sale, including the warrant and certificate of the oath, as a complete and perfected record of the sale.

The fact that a record was made from the original, need not appear in the certificate of the clerk. That is presumed.

Neither is a vendue sale rendered invalid by the fact that a sheet containing a list of unredeemed lands, is tied into the book of records, instead of being copied in.

Carbee v. Hopkins.

In making title under an executor's deed, it is necessary to produce in evidence the license to sell, as well as to prove the allowance of the will.

But where the license is not produced, the executor being sole legatee in the will, and having by the deed conveyed the premises in question, with personal covenants against incumbrances and of warranty, binding himself and his heirs thereto, no claims of creditors intervening, the deed operates as an effectual conveyance by way of estoppel, as against the executor, or any one setting up his claim as a defense.

The intent of the parties to the deed in this case, as derived from the language, was to convey and receive such title as Mrs. D. had as executrix, and, if that was invalid for any reason, such title as she had as legatee under the will, and to give it effect accordingly.

EJECTMENT, in which the plaintiff claims to recover about five acres of lot No. 18 in the 8th range, being in the second division of the original right of James Matthews, Jr., in the town of Guildhall. Trial by jury, September term, 1867, STEELE, J., presiding.

The plaintiff claims title by virtue of a tax-sale made by Timothy Fairchild, collector of a special road-tax, which sale was made on the 17th day of March, 1840. To the validity of this sale the defendant objected, 1st, that it does not appear by the record, when the warrant to the collector, nor when the certificate of the oath to the collector, was returned to the office of the town clerk, and that the first certificate of the town clerk, following the record of said warrant and oath, relates to the receipt and recording of the advertisement of the sale, and does not refer to the warrant nor the oath; 2d, that the list of unredeemed lands was never recorded, but some sheets of paper that purport to contain such a list, are inserted into said book, between pages 70 and 71 of said book. The title under said sale was acquired by Dr. John Dewey, and, he having deceased, the plaintiff acquired his title by a deed from Mary C. Dewey, the executrix under his will. The deed, which is made a part of the case, purports to convey the land by virtue of a license from the probate court; but no license was shown, but the will of Dr. John Dewey was read.

The court decided that the tax-sale and said conveyance made a good title in the plaintiff, for the purposes of this trial, and, the jury having found a verdict for the plaintiff, the defendant excepted.

The counsel for the plaintiff claiming that the verdict of the jury under the charge of the court, was decisive of the case, even if the plaintiff had no title to the land, the following was added to the bill of exceptions, by way of amendment, to show what questions were submitted.

The defendant proved that he had been in possession of the land in dispute more than fifteen years, and no question was made but his possession had been open, exclusive and continuous for that period. Question was made whether the defendant's possession had been adverse and under claim of title. The possession of the defendant was of the same character when the plaintiff took his deed, that it had been for more than fifteen years before; so that if the jury found it was adverse *then*, it had been for the statutory period. The evidence as to prior possession on the part of the plaintiff's grantor, was not such as to warrant the court in assuming that the plaintiff or his grantor either had, or had not, possession before the defendant went into possession, and no question as to prior possession was submitted to the jury. The plaintiff's testimony tended to show that the defendant admitted to him, after the death of Dr. Dewey, that " he held the land under Dr. Dewey." This the defendant's testimony contradicted. The plaintiff also relied on the testimony of one Emerson, a witness introduced by the defendant, who stated, on cross-examination, as follows : " Lot No. 18 was called the Dewey lot. I worked on Hopkins's lot (24) which joined 18, reaping for Hopkins. Dr. Dewey wanted I should inquire of Hopkins if some of his clearing did not extend over upon No. 18. I made the inquiry. Hopkins said the clearing was on 24. I said, isn't some of it on 18? He said, 'No; not a particle of it. If it is, I don't claim it.' I told Dewey what Hopkins told me; that he didn't claim 18." This conversation occurred before the defendant had occupied the land fifteen years. It appeared that the defendant had cleared over his true line upon lot No. 18, though the plaintiff's evidence tended to show that he supposed the whole clearing was on 24. That portion of the clearing which is on 18, is the land in controversy in this case. The plaintiff claimed that the jury might infer from what was said, and the circumstances under-

which it was said, that Hopkins understood that Emerson, in making this inquiry, was acting for Dr. Dewey, and that what he (Hopkins) replied was in substance a message to Dewey. There was no evidence of anything further being afterward said between Dewey and Hopkins about this clearing.

The court told the jury that they should render their verdict for the plaintiff, if they found that Hopkins admitted that he held the land under Dewey, and were satisfied from the admission, that he really did. The court also told the jury that, even if they did not find for the plaintiff on that point, still, if they found that what Hopkins said to Emerson was intended by Hopkins as a message to Dewey, and it was so communicated to Dewey, Hopkins, without revoking it or saying anything further to Dewey, would not be at liberty to claim title to the land, and, the court having already ruled that the title to the land was in the plaintiff, Dewey's grantee, unless it was in the defendant, the jury should render their verdict for the plaintiff, if they found that Hopkins understood that Emerson was acting for Dewey, in making the inquiry, and that his reply was to be communicated to Dewey as a message, and that it was subsequently so communicated, and never revoked. Unless the jury found for the plaintiff on one of these two grounds, they were told that their verdict should be for the defendant, for there were no other grounds upon which the defendant's claim of title by possession was questioned.

The jury rendered a general verdict for the plaintiff, as before stated.

The following is an abstract of the town clerk's records in respect to said vendue sale.

" Collection of a three-cent per acre road-tax granted in 1837, and the sale of lands made in 1840."

\*     \*     \*     \*     \*     Here follow the notice of the committee, dated March 17, 1838, to which no objection was made, and the certificate of the town clerk, that the papers containing said advertisement were presented at his office, and a description of said papers as required by the statute, dated April 10, 1840, to which no objection was made.

\*     \*     \*     \*     \*     Here follows a receipt of the road

committee to. the collector for his bond, dated October 30, 1838, to which no objection was made.

\*   \*   \*   \*   \*   Then follow the warrant and certifi-cate of the oath.

\*   \*   \*   \*   \*   Then follow the collector's notice of the sale, dated December 30, 1839, and a certificate of the town clerk, that the papers containing the advertisement were presented to him, with a description of said papers dated April 9, 1840, to which there was no objection made.

\*   \*   \*   \*   \*   Then follows the record of the sale, to which no objection was made.

"Received for record and recorded and examined April 7, 1840.        Attest,     JOHN DODGE, Town Clerk."

By said will Dr. Dewey gave, substantially, all his estate, including the premises in controversy, to Mrs. Dewey, and she was appointed executrix. The will was duly probated August 1, 1862. Mrs. Dewey's deed to the plaintiff is sufficiently referred to and set forth in the opinion of the court.

*Fletcher & Heywood* and *Henry Heywood,* for the defendant.

There were two questions submitted to the jury by the court: 1st, whether the defendant admitted he held, and in fact did hold, the land under Dr. Dewey ; 2d, whether the defendant intended the evidence detailed, that " if any of his clearing on lot 24 extended on to lot 18, he did not claim it," as a message to Dr. Dewey. And the verdict was general, and therefore does not show that it was rendered upon the ground that the defendant was a tenant to Dewey, or in possession under his title. The evidence upon which the second question arises, tended to show a mere notice to Dr. Dewey that the defendant laid no claim to lot 18, and has no tendency whatever to show a tenancy of the defendant to Dewey, or that his possession was under his title, but distinctly shows that he was not in possession as a tenant to Dr. Dewey, or under his title. And if the verdict of the jury was upon this question, then the defendant is not estopped to question the plaintiff's title. And, upon this point, the affirmative is upon the plaintiff to support the estoppel he sets up. The cases in

this state, where a party has been estopped from disputing the title of an adverse party, are all cases in which the possession was under a tenancy, or in subjection to that title.  Brayt., 150; 1 Aik., 306; 1 Vt., 80; 7 Vt., 12; 8 Vt., 445; 9 Vt., 37; 10 Vt., 220, 593; 11 Vt., 323, 632; 16 Vt., 616; 17 Vt., 297; 18 Vt., 600; 19 Vt., 156.  The plaintiff has not the title of Dr. Dewey, as the executrix of Dewey, who made the conveyance to the plaintiff, had no license from the probate court to sell the real estate of the deceased, which is required by our statute in order to pass that title.  Gen. Sts., ch. 52, § 39.  And, therefore, the defendant is not estopped to question the title of the plaintiff.  The tax upon which the sale was made, under which the plaintiff claims to derive title, was assessed by the legislature in 1837.  Acts of 1837, p. 80, No. 34.  And the sale was made under the provisions of an act passed November 11, 1807.  Slade's Sts., p. 665.

The first objection made to the sale, is that this provision of the statute has not been complied with.  The only certificate of the town clerk which can have any reference to the receipt and record of the collector's warrant and the certificate of the oath, is that at the end of the record, on page 71, made April 7, 1840.  This certificate, we claim, is not sufficient to show a compliance with the statute.  It should distinctly appear by the certificate, that the original warrant and certificate of the oath from which the record is made, were presented at his office.  *Carpenter* v. *Sawyer*, 17 Vt., 121.  The words of both certificates in the record, directly exclude the idea that they have any reference to the warrant or certificate of the oath.

The second objection to the sale is that the same section requires that the list of lands not redeemed shall be recorded within thirty days after the expiration of the time for redemptions.  In this sale, the list of lands not redeemed is tied into the record-book with a string.  That, certainly, is not making a record.  As to what constitutes a record, see *Ferguson* v. *Harwood*, 7 Cranch, 408; *Strimpfler* v. *Roberts*, 18 Pa., 283; *Meserve* v. *Hicks*, 4 Foster, 295; *Stone* v. *Sprague*, *Ib.*, 309; *Pawlet* v. *Sandgate*, 17 Vt.,

619 ; *Ellsworth* v. *Learned,* 21 Vt., 535 ; *Sawyer  et al.* v. *Adams,* 8 Vt., 172.

The third exception taken by the defendant, is that there was no license shown from the probate court to Mrs. Dewey, executrix of Dr. Dewey, to sell real estate, as required by the statute before cited, and the provisions of that statute show that the granting of such a license is a judicial proceeding that must be had before the probate court, in order to give an executor or administrator the authority to dispose of the real estate of the deceased. *Adams* v. *Morrison,* 4 N. H., 166 ; *Clapp, admr.,* v. *Beardsley,* 1 Aik., 168.

The will of Dr. Dewey gives all his estate to Mrs. Dewey, and her deed to the plaintiff recites a license, and covenants to warrant and defend against all persons ; and the plaintiff may claim that she would be estopped by her deed from questioning the title of the plaintiff. The defendant does not question that position, so far as it extends to Mrs. Dewey, but says that he can not be estopped by her acts. *Weidman et al.* v. *Kohr,* 4 S. & R., 173 ; *Braintree* v. *Hingham,* 17 Mass., 431 ; *Worcester* v. *Green,* 2 Pick., 425 ; *Langer* v. *Felton,* 1 Rawle, 141 ; *Griggs* v. *Smith,* 7 Halst., 22.

*Ossian  Ray,  George  N. Dale,* and *William  S. Ladd,* for the plaintiff.

The plaintiff's title was good as against a person having no title, and that was as far as the court below held in respect to the title.

The court instructed the jury that, in order to find for the plaintiff, they must either find that Hopkins admitted that he held the land under Dewey, in such a way as to satisfy the jury that he really did so hold it, or that Hopkins understood Emerson was acting for Dewey, in making the inquiry, and that his reply was to be, and actually was communicated to Dewey, and was never revoked.

Those were the only questions left to the finding of the jury, and to the instructions submitting them no exceptions were taken, and the finding of the jury in favor of the plaintiff upon either, was conclusive of the whole case.

If the jury found for the plaintiff on the first question, the

defendant could not set up his title against his landlord, for his relation to Dewey would be only that of tenant. *Tuttle* v. *Reynolds*, 1 Vt., 80 ; *Greeno* v. *Munson et al.*, 9 Vt., 37 ; *Ripley* v. *Yale*, 18 Vt., 220, are in a long line of cases announcing this doctrine.

If the jury found for the plaintiff on the second question, the defendant would be estopped from setting up a title in himself. After a possession has ripened into a title, we concede, the possessor could not reconvey it by parol, but, before that occurs, his declarations and messages to the true owner fix the character of his possession, and put the true owner at rest. But the verdict being general, the inference is that all the issues were found in favor of the party for whom the verdict was rendered. *White, admr.,* v. *Simonds, Conant & Co.*, 33 Vt., 178.

The objections to the validity of the vendue sale are not well founded.

The opinion of the court was delivered by

PROUT, J.   Upon these exceptions, but two questions are open to the plaintiff, and on the argument counsel so regard it.

I.   The plaintiff claims title to the premises in controversy, by virtue of a deed from Mrs. Mary C. Dewey, and by virtue of a tax-sale to her husband on the 17th of March, 1840, the record of which was introduced in evidence. To the validity of the collector's sale the defendant urges two objections : *first*, that the record does not show that the original warrant directed to the collector, and the certificate of his oath, were returned to the town clerk for record, as the statute requires ; and *second*, that the list of unredeemed lands was not recorded. Granting that the statute is imperative, and requires the record of the town clerk to be made from the original, it would be a forced presumption, in the absence of all evidence warranting it, to suppose that he resorted to any other medium for the purpose of making the record. It may be competent to show it, but it is quite a different matter to infer it. The statute (Gen. Sts., ch. 15, § 32) in relation to the duties of town clerks, provides " that he shall record at length   *   *   * all deeds and other instruments and evidences respecting real

estate," and contemplates that the record shall be made from the original instrument.  It means copying it into the public records, and it was never suggested to our knowledge, that, to be valid as a record, this must appear from the certificate of the town clerk. That is presumed, and, to avoid the effect of the presumption that the acts of a public officer, apparently regular, are in compliance with the law prescribing his duty, it must be shown to be otherwise ; and this presumption applies, with equal reason, to the record of a collector's sale, as to the record of a deed.  This being so, and the entire record in question standing in the order and connection it does in the book of records, we think the certificate of the town clerk, " Received for record and recorded and examined," under date of April 7, 1840, authenticated or verified as it is by him in his official capacity, refers and applies to the entire record, the proceedings and sale, including the warrant and certificate, as a complete and perfected record of the sale.  Nor do we think the second objection urged to the validity of the collector's sale, tenable.  If it were, the community would lose the benefit and security of a great proportion of the early records of the state, including judicial records.  The statute, it is true, requires town clerks to procure suitable books and make their records in them ; but what is a suitable book for that purpose, admits of a diversity of opinion and considerable latitude of construction.  The validity of the record can not depend upon a rule so indefinite and uncertain.  Whether a record or not, depends upon the fact whether the deed, instrument or paper has been recorded in the public records by the proper officer, or by his direction and under his supervision ; there being no fraud or material mistake committed in respect thereto.  This record, appearing regular and full in the particulars referred to, is not defective for either of the reasons assigned.

II.   The question then is, and it is the important inquiry in the case, has the plaintiff Dr. Dewey's title, which he in his lifetime acquired by virtue of the collector's sale ?  Dewey having deceased, the plaintiff derived title, if at all, by virtue of the deed from Mrs. Dewey, the executrix of his will.  By the will Dr. Dewey gave, substantially, all his estate, including the prem-

ises in controversy, to Mrs. Dewey, and, by her deed to the plaint-
iff, she purports to convey them by virtue of a license granted
by the probate court; and, as the case shows, this license was
not produced or introduced in evidence on the trial. In the
deed, Mrs. Dewey not only recites the license, but she enters into
certain covenants expressed in this language: "And I, the said
Mary C. Déwey, covenant with the said Thomas Carbee" [plaint-
iff], "his heirs and assigns, that the said John Dewey died seized
and possessed of the granted premises; that I am duly author-
ized by the court aforesaid, to convey the same to the said
Thomas Carbee in manner and form aforesaid; that I have
in all things observed the directions of the law and the license
aforesaid, in making said sale; that said premises are free from
all incumbrances, and that I will, and my heirs, executors, and
administrators shall, warrant and defend the same against all
persons claiming the same;" and it is executed by her as "execu-
trix as aforesaid." The collector's sale being valid, she acquired
title to the premises under the will of her husband, Dr. Dewey,
and it remains where the will placed it, unless her deed is an
effectual and operative conveyance to the plaintiff. Regarding
Mrs. Dewey as interested in the disputed premises *only as execu-
trix*, her deed was the execution of a power existing under the
law, conferred by the probate court, authorizing her to sell the
real property of her husband's estate, for purposes contemplated
by the statute. When so authorized, she could convey the title,
to the same intent and effect the testator could in his lifetime.
But the will must be proved. Unless it was, she was without au-
thority to act on behalf of the estate; and, in making title under
her deed under such circumstances, it was necessary to produce in
proof the license, as well as to prove the allowance of the will.
Her power as executrix, to convey, was derivative, and her au-
thority must be shown, as well as that it has been substantially
pursued in form; and this can ordinarily appear only from the
probate records properly authenticated. The recitals in the deed
are insufficient for that purpose, however it might be as between
Mrs. Dewey and her grantee, the plaintiff.

But it is claimed, inasmuch as Mrs. Dewey was substantially the
sole legatee in the will (and this is conceded, as well as its exe-

'cution and proof, in the argument), no claims of creditors inter-
vening, and having by the deed referred to conveyed the premises
in question, with personal covenants against incumbrances and
of warranty, binding herself and heirs thereto, that it operates as
an effectual conveyance by way of estoppel.    There is no imper-
fection in the execution of the deed, and the language in which
those covenants are expressed, is not only emphatic, but, in con-
nection with the *habendum* clause, is a direct assertion of the
grantor that the grantee, his heirs and assigns should have and
hold the estate therein described, to their own use, without quali-
fication.    The case is one, then, which by matter of deed comes
within the reason of the rule that " a man's own act stoppeth or
closeth up his mouth to allege or plead the truth," if not within
a broader scope sometimes given it, actually to pass and transfer
the estate.    And, we must say, in view of what the parties de-
signed to accomplish, as indicated by the language of the convey-
ance, and all its parts, and understanding that as no doubt the
fact really is, it would be doing no violence to legitimate and fair
construction, to hold that the parties to this deed intended to con-
vey and receive such title as Mrs. Dewey had as executrix, and,
if that was invalid or ineffectual for any reason, such title as she
had as legatee under the will, and to give it effect accordingly.
In the instrument she appears in both her official and private ca-
pacity or right.    The will gave her the premises; she owned
them; the grant is in her name, and she, not as executrix, cove-
nants to warrant and defend the same against all persons.    In
*Brown* v. *Edson et al.*, 23 Vt., 435, REDFIELD, J., alludes
to the question which arose in that case upon an administrator's
deed.    He says : " But in the particular case, if the deed at-
tempted to be proved, was properly in evidence, and the identity
of the parties shown, the title would be in the administrator him-
self, instead of his intestate.    In such a case it becomes a grave
question, whether the grantor is not estopped to deny that what-
ever title he possessed did pass.    I should, for one, be inclined
to believe such must be the effect of his deed.    It has often been
held that the owner of land who stands by, and aids in the exe-
cution of a deed of such land by a stranger, and himself becomes

a witness of the conveyance, is thereby estopped to deny that the title passes; *a fortiori*, if he gives a deed of land himself, although as administrator of some one possessing no title, and of whose estate he has no legal administration." The force of this reasoning is apparent, and must strike all minds alike; and as affected by the same principle, are cases where, it appearing by covenants contained in the conveyance itself, " that the parties intended to convey and receive reciprocally a certain estate, they have been held to be estopped from denying the operation of the deed according to that intent." Rawle on Covenants, 407, note 2; *Jarvis* v. *Aikens et al.*, 25 Vt., 635, and cases there cited. This the defendant does not controvert, as applied to the plaintiff and his grantor, but claims that he is not affected by her deed or covenants, as he is not in legal privity with, or claiming through her. Rawle (*supra*), 408, says an estoppel has an ordinary and extraordinary effect. In the one case it is " personal in its character, like the rebutter in a warranty, and estops the grantor and his heirs from doing or alleging anything contrary to the tenor and effect of his sealed instrument." In the other, " besides this quality, it possesses the high function of actually transferring every estate, present or future, vested or contingent, to the feoffee, conusee, or lessee, according as the mode of assurance employed is a feoffment, a fine, or a lease." The former effect applies as against parties and privies, but by the latter, when a party conveys with warranty, an estate is called into being as against the grantor, and the deed inures to the benefit of the grantee and in discharge of the grantor's covenants. *Middlebury College* v. *Cheney*, 1 Vt., 336; *Blake* v. *Tucker*, 12 Vt., 39. In *Jarvis* v. *Aikens* (*supra*), BENNETT, J., says the estoppel " becomes a muniment of title," arising and existing in that case from a mortgage deed containing covenants. With equal reason, this effect arises from an administrator's or executor's deed containing such covenants, possessing the quality of working upon the grantor's interest in the premises to which the covenants relate, and of transferring it to his grantee. Otherwise, the party for whose benefit the conveyance was intended, might find himself remediless at law, as against a mere intruder or stranger to all

title. The objection urged against this view, is that the plaintiff's remedy is in chancery; that the deed conveys only an equitable title, which is invalid at law. We have no occasion to question this distinction as recognized in some of the cases. In the present case, the facts are marked, and in the aspect they present the question we consider and determine it. At the time Mrs. Dewey delivered this conveyance, she had the title and owned the premises, and by that conveyance she intended to convey them to the plaintiff. The defendant is a stranger to all title, so far as appears, but puts his defense upon the ground, so far as this branch of the case is concerned, that the plaintiff's grantor has the legal title notwithstanding her deed. We think, under the circumstances, if he attempts to shelter himself in the shadow of her claim, that her deed must have the *extraordinary* effect alluded to, as to him, that it has as against Mrs. Dewey, and that he can stand in no better position than she does, or could, were she the party defendant in the action.

The judgment of the county court is affirmed.