## NORTH vs. HENNEBERRY and others.

DEED: ESTOPPEL: ALTERATION: EVIDENCE. *(1, 2) Whether a certain
instrument is the deed of the land-owner or of his attorney. (3) Estop-
pel of attorney by the covenants. (4, 5) Effect of alteration in deed after
delivery. (6) What questions, touching alteration, for the jury. (7) Evi-
dence.*

1. A deed executed by H., who had a power of attorney to sell and convey
for P., describes H., "attorney in fact and by virtue of a power of at-
torney from P.," etc., as the party of the first part, and states that "said
party of the first part," in consideration of a certain sum in hand paid by
the second party, the receipt of which is thereby acknowleged, has
granted and conveyed, etc.; that "said party of the first part, for himself
and his principal, and his heirs, executors and administrators," covenants,
etc.; and that "said party of the first part has thereunto set his hand and
seal;" and at the time of its delivery the deed was signed and sealed only
by H.; but the execution was afterwards altered so that it purported to
be signed and sealed by P., by his attorney in fact, H. The acknowledg-
ment by H. is, that he executed the deed for the purpose therein men-
tioned. The premises are described in the deed as "the undivided one-
half belonging to P." of certain lands. *Held,* that it was not the deed
of P., and he was not estopped from setting up title to the land as against
the grantee therein.
2. The facts that the deed discloses on its face that the grantor was not the
owner of the land, and that he claims therein to convey by virtue of a
power of attorney from P., do not render it *void,* as the deed of H.

North vs. Henneberry and others.

3. So long as the grantor's covenant in the deed to defend the grantee's title remained in force against him, the fact, appearing on the face of the deed, that the grantor intended to convey only the title of his principal, would not prevent his being *estopped* by it from setting up title in himself, upon a subsequent grant from the principal, in hostility to the title of the grantee.

4. The alteration above described, made after the execution of the deed, in the form of the execution, was a material one; and, if made by the grantee, or by some third person with his consent, or by or with the consent of one claiming title under said grantee, and without the prior or subsequent knowledge and assent of the grantor, though it would not divest any estate vested in the grantee by the delivery of the deed, it would render the instrument so far void that no action could be maintained on its covenants by any party to the alteration.

5. If one claiming under such deed introduces in evidence the record thereof without the alteration, and the original is then produced in evidence showing such alteration, the burden of proof is on him to explain it, and show facts upon which the grantor will be bound by its covenants notwithstanding the alteration.

6. The questions whether an alteration in a deed, made after its delivery, was made without fault of the person claiming under it or his grantors, and whether the grantor assented thereto, are for the jury.

7. Proceedings in a partition suit nearly two years after the grantor had full knowledge of the alteration in the deed, wherein it appeared that he testified that the grantee in such deed owned the interest which such deed purports to convey, are pertinent evidence to show his assent to such alteration as lawfully made.

APPEAL from the Circuit Court for *Eau Claire* County. The case is thus stated by Mr. Justice TAYLOR:

This action was brought to recover the undivided one-half of two city lots, situate in the city of Eau Claire. It is admitted that previous to the 23d day of September, 1861, the title to the premises claimed was in one William Powers; and that, previous to that date, said Powers had duly executed and delivered to the defendant *Henneberry* a power of attorney authorizing him to sell and convey the title of Powers in and to said lots. On the 23d day of September, 1861, *Henneberry* made, executed and delivered to one John O'Meara, a deed bearing date on that day, which was undoubtedly intended to be exe-

cuted by him under his power of attorney from Powers, pur-
porting to convey to the said O'Meara the undivided one-half
of said lots belonging to Powers. The following is a copy of
the parts of said deed material to a proper understanding of the
questions discussed in this case:

" This indenture, made this 23d day of September, in the
year of our Lord one thousand eight hundred and sixty-one,
between *Edward Henneberry*, attorney in fact, and by virtue
of a power of attorney from William Powers to said *Henne-
berry*, duly executed and delivered on the 1st day of May, A.
D. 1860, said *Henneberry* residing in Westport, in Dane county,
Wisconsin, of the first part, and John O'Meara, of Eau Claire,
Eau Claire county, Wisconsin, of the second part: *Witnesseth*,
That the said party of the first part, for and in consideration
of four hundred and ninety dollars in hand paid by the said
party of the second part, the receipt whereof is hereby ac-
knowledged, has granted and conveyed " (in the usual form
then giving a description of the lands conveyed).

The description of the property conveyed is as follows, after
naming the county in which the premises are situate: " de-
scribed as an undivided one-half belonging to William Powers,
of lots seven (7) and eight (8), in block nineteen (19), of Huys-
sen, Marfield, Galloway and Meredith's addition to Eau Claire,
as platted and recorded, being in the town of North Eau Claire."
After the usual *habendum* clause, the deed proceeds as follows:

" And the said party of the first part, for himself and his
principal, and his heirs, executors and administrators, does
covenant and agree to and with the said party of the second
part, his heirs and assigns, that the aforesaid premises, against
all and every person lawfully claiming or to claim the whole
or any part thereof, they will forever warrant and defend.

" In testimony whereof, the said party of the first part has
hereunto set his hand and seal, the day and year first above
written; this deed is made by virtue of said power of at-
torney."

The proof very clearly shows that the deed was signed at the time it was delivered, simply, " EDWARD HENNEBERRY. [L. s.] " The execution was afterwards altered so as to read as follows: " WILLIAM POWERS. [L. s.]   B. his attorney in fact, EDWARD HENNEBERRY. [L. s.] "

The acknowledgment was in the following form:

" Be it remembered that on this 23d day of September, A. D. 1861, before the undersigned, notary public in and for said county, personally came the above named *Edward Henneberry*, to me known, and acknowledged that he executed the foregoing instrument for the purpose therein mentioned."

The plaintiff claims title to the disputed premises under O'Meara, the grantee in said deed; and the defendant *Henneberry* claims under a deed from William Powers bearing date July 29, 1869.

The circuit judge directed a verdict for the defendants; and the plaintiff appealed from the judgment.

A brief was filed for the appellant by *Bailey & McCaslin*, and a supplemental brief was filed, and the cause argued orally, by *Mr. Bailey*. They contended that if the deed was not that of Powers (as to which they cited *Webster v. Harris*, 16 Ohio, 490; Story on Agency, § 153), it was defendant's deed, being made and sealed by him *(Lessee of Clark v. Courtney*, 5 Pet., 349; *Duvall v. Craig*, 2 Wheat., 45; *Appleton v. Binks*, 5 East, 148; *Tippets v. Walker*, 4 Mass., 595; *Sumner v. Williams*, 8 id., 162; 11 id., 28; *Spencer v. Field*, 10 Wend., 87; *Stone v. Wood*, 7 Cow., 453; *Welsh v. Usher*, 2 Hill Ch. (S. C.), 167; *Wheeler v. Knaggs*, 8 Ohio, 169; *Deming v. Bullitt*, 1 Blackf., 241; 2 Am. L. C., 605); that if it was *inoperative* to transfer title, for want of interest in defendant, still he was bound by the covenants *(Lessee of Clark v. Courtney, supra; House v. McCormick*, 57 N. Y., 310; *Wiesner v. Zaun*, 39 Wis., 189); that the grantor in such a deed will not be allowed to show that he had no title, but is estopped by his covenants (Herman on Est., §§ 211, 212, 275;

*Eveleth v. Crouch*, 15 Mass., 307; *Wilkinson v. Scott*, 17 id., 249; *Heard v. Hall*, 16 Pick., 457; *Harvey v. Morton*, 36 Miss., 411); that defendant was also estopped by his acts *in pais* (2 Smith's L. C., 765, 770, and cases there cited; *Preston v. Mann*, 25 Conn., 118: *Shaw v. Beebe*, 35 Vt., 205); and that estoppels will sustain actions of ejectment. *Lessee of Kinsman v. Loomis*, 11 Ohio, 479; 2 How., U. S., 316–17; Bigelow on Est., 327. The estate subsequently acquired by the grantor in such a deed enures to the benefit of the grantee. *House v. McCormick* and *Wiesner v. Zaun, supra*. As to the alleged alterations in the deed, they argued that the burden was upon the defendant to show them *(Davis v. Jenny,* 1 Met., 221), and the question of fault was for the jury *( Wood v. Steele,* 6 Wall., 80); and that if it was defendant's deed, the alterations were mere surplusage and immaterial, and at least did not destroy the estate conveyed by the deed. 2 Parsons on Con., 716–17, 722–3.

For the respondent, a brief was filed by *Henry Cousins* and *Loren Edwards* as his attorneys, and *Levi M. Vilas*, of counsel, and the cause was argued orally by *Mr. Vilas*. They contended, 1. That the deed, as executed, was void. Story on Agency, §§ 148, 150, and cases there cited; 1 Am. L. C., 598; *Elwell v. Shaw*, 16 Mass., 42. It is not Powers' deed, because it does not purport to be made by him; nor defendant's, because it purports to be made only by virtue of a power of attorney, and not to convey any land of defendant; nor, if defendant's deed, could it convey Powers' land; and therefore no title passed by it. 2. That it did not create any estoppel, because it was a void instrument (Bigelow on Est., 253; 3 Washb. R. P., 100, § 33; *Merriam v. Railroad Co.*, 117 Mass., 241; *Caffrey v. Dudgeon*, 38 Ind., 512; *Lessee of Patterson v. Pease*, 5 Ohio, 190; *Wallace v. Miner*, 6 id., 366); and because the covenants in a deed executed by an attorney do not estop him *(Kern v. Chalfant*, 7 Minn., 487; *Smith v. Penny*, 44 Cal., 161); and that the doctrine of estoppel is inapplicable for

the further reason that defendant merely denies that the deed conveyed any title to Powers' land, and that appears on the face of the deed itself. Bigelow on Est., 263; 2 Smith's L. C., 640; *Sinclair v. Jackson*, 8 Cow., 543; *Wheelock v. Henshaw*, 19 Pick., 341; *Davis v. Judd*, 6 Wis., 85; *Pargeter v. Harris*, 7 Q. B., 708. 3. That the alteration was material (1 Greenl. Ev., § 565; *Herrick v. Malin*, 22 Wend., 388); that after the record of the deed had been offered by plaintiff, the production of the deed as altered impeached the record evidence (Tay. Stats., 1149, § 34; R. S. 1858, ch. 86, sec. 31; *Tisher v. Beckwith*, 30 Wis., 55), and threw the burden of explaining the alteration upon plaintiff, the presumption being that it was made by the party claiming under it, or by some one under whom he claimed (*Cochran v. Nebeker*, 48 Ind., 459; *Elbert v. McClelland*, 8 Bush, 577; *Bery v. Railway Co.*, 26 Ohio St., 673; 14 Eng. Rep., 576, and Moak's notes); and, in the absence of any explanation, the alteration destroyed the deed as evidence, and left his claim of title wholly unsupported. 1 Greenl. Ev., §§ 565, 568; *Master v. Miller*, 1 Smith's L. C., 934 et seq., and cases cited in notes; *Lewis v. Payn*, 8 Cow., 71; *In re Wilson*, 8 Wis., 171. 4. That since the legal title of the parties to the partition suit could not be determined in that action (*Deery v. McClintock*, 31 Wis., 195; *Hardy v. Mills*, 35 id., 141), their admissions in the pleadings as to such title could not estop them; that such admissions estop the parties only in the action in which they are made (2 Smith's L. C., 687-8; *Carradine v. Carradine*, 33 Miss., 698; *Boileau v. Rutlin*, 2 Exch., 665); and that, as admissions of an erroneous conclusion of law, rather than of a fact, they would not bind. *Thayer v. Arnold*, 32 Mich., 336; *Chautauqua, etc., v. White*, 6 N. Y., 252; *Brewster v. Striker*, 2 id., 19; *Doney v. Hastings*, 23 Wis., 475; *Orton v. Noonan*, 27 id., 272-291.

TAYLOR, J. The appellant insists that if the deed of *Hen-*

*neberry* to O'Meara did not convey to him the title of Powers, still it was a valid deed, and that, by virtue of the covenants therein contained, the after-acquired title of *Henneberry* inured to the benefit of O'Meara and his assigns.

The respondents claim that it is not the deed of Powers, and is entirely void as a deed of *Henneberry* in person.

We agree with the respondents that the deed is not the deed of William Powers, and did not convey the legal title of Powers to the grantee, O'Meara; and that Powers was not estopped at law from setting up a title to the lands described in said deed, as against O'Meara and his assigns. That the deed was the deed of *Henneberry*, and not of his principal, is very clear. In the statement of the parties, *Henneberry* is declared to be the party of the first part; he acknowledges the receipt of the consideration by himself from the party of the second part; he grants the lands, and makes the warranty, both for himself and his principal, and his heirs; in the *testimonium* clause, he declares that he signs and seals the same; and he in fact signs his name, and not the name of his principal. And he also acknowledges the deed as his personal deed, and not on behalf of his principal. The form of the deed is such that it is unnecessary to cite authorities to show that it must be considered the deed of *Henneberry*, and not the deed of his principal. There was in fact but little contention by the counsel for the respective parties on this point, and we only cite Story on Agency, §§ 273, 277, 278, as abundant authority for our opinion on this point.

As the deed of *Henneberry*, the counsel for the respondents contends that it is absolutely void, conveys no title, and cannot be used, by way of estoppel or otherwise, to bar the grantor from claiming title in himself under his deed from Powers. On the other side, the counsel for the appellant contends that, although it be admitted that no legal title in fact passed by the deed, the grantor, *Henneberry*, having none at the time, yet his deed is not absolutely void; and that, by virtue of the

North vs. Henneberry and others.

covenants therein contained, by which *Henneberry* agrees to defend the title of O'Meara and his heirs and assigns to the lands described therein and which it purports to convey, any title which *Henneberry* subsequently acquired to such premises inured immediately to the benefit of O'Meara and his assigns.

It is not very strenuously contended by the counsel for the respondents, that this would not follow if the deed were not void.

It is claimed to be void because it discloses on its face that the grantor was not the owner of the land purporting to be conveyed by him, and because he claims to make the conveyance under his power of attorney from Powers.

We do not think the deed is void for either of these reasons. If *Henneberry* had made this deed without making any reference to his power of attorney, and without any recital, in the description of the premises, that they were owned by some other person, there can be no doubt but that the covenants would have bound him, notwithstanding he might have told his grantee, at the time he made the deed, that he had no title, and that some one else owned the lands. How, then, does it alter the case that such knowledge is conveyed to the grantee by a recital in the description of the premises in the conveyance? In either case, the grantee pays his money on the faith of the covenants of the grantor, and trusts to his power and good faith to procure the title in the future to sustain his grant, and prevent a breach of his covenant. If the title to the lands be not in the grantor, he may have the possession, and the power to transfer such possession; or, if he have not the possession, he may have a contract for the purchase of the title from the true owner, which will enable him to prevent a breach of his covenant; or, without having either the possession or a contract with the owner, he may lawfully rely upon his ability to procure from the real owner the title, to make good his grant and keep his covenant.

Unless it can be shown to be unlawful for one man to agree to convey to another, for an adequate consideration, land of which he has not the present legal title, it cannot be held that a deed expressing that intent is void.  Sec. 45, ch. 165, R. S. 1858, makes it a crime for any person to falsely and fraudulently represent that he is the owner of the lands to which he has no title, and execute a deed of the same with intent to defraud; but clearly this section gives no force to the argument that it is illegal for a person to make a deed of lands to which he has no title, where he notifies his grantee at the time that he has none.

A court which desired to administer justice fairly, would hesitate to say to a man who had received an adequate consideration for a covenant on his part to convey to his covenantee a parcel of real estate, which both parties knew, at the time of making the covenant, was owned by a third party, that such covenant was void, and no action could be maintained for a breach thereof.  A court of equity, upon an application of the covenantee for a specific performance of the contract, if it was shown that the covenantor had, after making his contract, obtained the title from the true owner, would not be likely to adjudge that the agreement was void, and refuse to grant the relief prayed for.

Rawle, in his work on Covenants, p. 449, says: " If a man contracts for the sale of an estate which he has not at the time such contract is entered into, and he afterward acquires such an interest as will enable him to make good his contract, equity will compel him to perform it, and make good the title; and the presence of a warranty in a deed purporting to convey an estate has, it would seem, upon strict principles, no greater effect than an averment that the contract between the vendor and purchaser is that that identical estate shall be actually transferred from the former to the latter; and such an effect can be produced by other covenants than those of warranty, and by other parts of the deed than the covenants."

But the counsel for the respondents contends that the deed is ineffectual to estop the grantor from setting up title in himself, because it appears on the face of the deed that he intended to convey only the title of his principal. To this point several authorities were cited. We have carefully examined them, and are of opinion they fail to prove that *Henneberry* is not bound by the covenant in his deed to defend the title of his grantee, and therefore estopped from claiming title in himself in hostility to the title of his grantee. The cases of *Smith v. Penny*, 44 Cal., 161, and *Kern v. Chalfant*, 7 Minn., 487, were cases in which an attorney in fact had executed a deed, under a power of attorney, in the name of his principal; it was held that the attorney was not estopped, as against the grantee, from setting up title in himself derived from his principal. These decisions were put upon the ground, mainly, that the covenants in the deeds were not the covenants of the attorney, but of the principal. So far as these decisions are based upon the ground that the attorneys were not estopped by the covenants, they were properly determined; but it is quite doubtful whether they ought to be, or would be, followed to their full extent by this court. There are reasons, independent of the covenants in the deed, why the attorney in such case should be estopped, as against the grantee and his assigns, from afterwards claiming title derived from his principal to the same lands. And I am better satisfied with the decision and reasoning of the court in the case of *Harvey v. Morton*, 36 Miss., 411, in which the attorney under like circumstances was held estopped by his deed. It would seem to be but equitable that an attorney who claimed to grant the title to real estate under a power of attorney from another, and received as such agent an adequate consideration for the estate granted, should be barred from afterwards saying to the grantee in such deed that his principal did not have the title at the time, but that the same was in fact in the attorney himself. It is possible that it would not be good law to say he

could not set up title in himself as against such grantee, but it certainly appears to me to be perfectly equitable that he should be prevented from so doing.

In *Wheelock v. Henshaw*, 19 Pick., 341, the case turned upon the pleadings. The court held that when a party takes issue on a fact upon which he might rely as an estoppel, and the issue is found in favor of the existence of the fact, judgment will be rendered without regard to the estoppel. The cases of *Patterson v. Pease*, 5 Ohio, 190, and *Wallace v. Miner*, 6 id., 366, were cases in which the deeds containing the alleged covenants were not in fact deeds. They were not so executed as to be sufficient in form to convey any legal title to real estate; they simply operated as agreements to convey; and the court held that a covenant to estop the grantor in a deed must be one which runs with the land, and that such a covenant can only be created by a deed so executed as to convey the legal title to the lands, if such title be at the time in the grantor. *Caffrey v. Dudgeon*, 38 Ind., 512, was a case arising upon a bond, and the court held that the obligor was not estopped from alleging that the bond was illegal and void at law. *Merriam v. R. R. Co.*, 117 Mass., 241, was a case in which the court held that a married woman who had attempted to transfer shares of stock without complying with the law on that subject, was not estopped from setting up her title against a purchaser from her transferee. In this case, the law having prescribed a way by which a married woman could transfer her stock, no transfer could be made which would bind her, unless made in conformity therewith. In *Davis v. Judd*, 6 Wis., 85, it was simply held that an action of covenant could only be maintained on a sealed instrument, and that the recitation in the instrument that the same was signed and sealed, did not prevent the signer from showing that it was not in fact sealed.

It is clear that these cases do not negative the conclusion that an attorney in fact, who executes a deed in his own name :

purporting to convey lands owned by his principal, and who covenants either for himself or his principal, or for both, to defend the title to the land conveyed, is not bound by his covenants to the same extent as any other grantor.

We think the conclusion that he is so bound is fully sustained by numerous authorities, as well as by sound sense. The following are a few of the authorities which so hold: *Appleton v. Binks*, 5 East, 147; *Leadbitter v. Farrow*, 5 M. & S., 345; *Stone v. Wood*, 7 Cow., 453; *Spencer v. Field*, 10 Wend., 87; *Sumner v. Williams*, 8 Mass., 162; *Carbee v. Hopkins*, 41 Vt., 250; *Heard v. Hall*, 16 Pick., 457; *Duvall v. Craig*, 2 Wheat., 45; *McCurdy v. Rogers*, 21 Wis., 199; *Dennison v. Austin*, 15 id., 334; Story on Agency, §§ 148, 155, 273, 277, 278, and notes.

The argument that, because it appears on the face of the deed that the title to the lands conveyed is not in the attorney, and that he is intending to act for his principal, there can be no consideration for his personal covenants, has but little force even in a case where the deed is so executed as to convey all the rights of his principal. The grantee might prefer to take the personal warranty as. to title from the attorney, who was present and known to him, rather than that of the principal, who was a stranger and perhaps resident in a distant part of the country; but in a case where the attorney so executes the deed as not to convey the title of his principal, there is the most urgent reason for holding him bound by his covenants for title; otherwise there would be no remedy at law upon the written contract against either the principal or agent for the consideration money paid to the agent.

But the respondent still insists that, though the agent may be personally liable for a breach of the covenant, yet he is not estopped from acquiring the title of his principal and setting up that title in hostility to such covenant. The argument is, that because the deed shows on its face that *Henneberry* was not the owner of the land at the time he undertook to convey

the same, he is not now estopped from purchasing and holding the same against his deed; that, not having, by his deed, either by implication or express words, declared that he owned the lands when he made his deed, no estoppel arises against him to prevent his showing the true state of his title and holding the lands, if he has acquired the true title. This argument is based upon the theory that the grantor of real estate with covenants of warranty of title, could not afterward show title out of himself at the date of the deed, because it would be a contradiction of either his express or implied statement in his deed that he held the title at the time of executing the same. Whilst this reason may have had weight in establishing the rule, which has existed for centuries, that the grantor of real estate, who in his deed covenants to defend the title of his grantee, his heirs and assigns forever, cannot afterwards set up title in himself in hostility to his grantee and his assigns, it was not the only or most weighty reason for its establishment. Most of the early cases base the rule on the ground of preventing circuity of action; and this was the principal ground where the grantor or his heirs were the claimants. In such cases it was said to be useless and absurd to permit the plaintiff to recover that which he must either return to the defendant at once *in specie*, or its equivalent in value. The courts of England and of most of the states in this country have adopted the rule, and the reason given for it by Rawle in the quotation above: that when the grantor covenants in his deed that a particular estate shall pass to, and be defended by the grantor in, the grantee and his assigns, as a court of equity would, if the covenant were in an executory agreement, compel the covenantor to convey the after-acquired title to the covenantee in performance of his contract, so when such covenant is contained in a deed which purports to pass the title *in præsenti*, a court of law will conclusively presume that every title afterwards acquired by the grantor, and which was intended to have been granted by the deed, was so acquired for the sole

North vs. Henneberry and others.

use and benefit of the grantee and his assigns, and that the title so acquired immediately inures to their use under and in satisfaction of his covenant. 3 Washburn on Real Property, 4th ed., 107, 109, and notes. It is the covenant which gives force to the estoppel, and not so much the implied or express statement in the deed that the grantor had the title at the date of the grant. The grantor will not be permitted to hold the estate against his solemn covenant that he will defend his grantee and his assigns in the full and perfect enjoyment of the same forever. The following are a few of a great list of cases, which hold that in a case like the one at bar, the subsequently acquired title of the grantor inures immediately on its acquisition to the use of the grantee and his assigns, and thereby perfects the legal title which was before imperfect. *Jarvis v. Aikens*, 25 Vt., 635; *Blake v. Tucker*, 12 id., 39; *Carbee v. Hopkins*, 41 id., 250; *Sumner v. Williams*, 8 Mass., 16\$; *Heard v. Hall*, 16 Pick., 457; *Middlebury College v. Cheney*, 1 Vt., 336-349; *White v. Patten*, 24 Pick., 324; 3 Washburn on Real Property, 4th ed., 107, 109, 110 and notes.

We hold that the defendant *Henneberry* cannot, under the facts disclosed in this case, assert title to the real estate in question against his grantee O'Meara, or his assigns, in direct hostility to his covenant, so long as such covenant remains in force against him.

It becomes necessary, therefore, to inquire whether the alteration which the evidence shows was made in said deed after its execution, destroyed the covenants therein. For, if such alteration destroyed the covenants so that a personal action could not be maintained thereon against *Henneberry* for a breach of the same, it would follow that they would also be ineffectual to estop him from claiming title in hostility to them.

There is really no ground for saying that the alteration was not a material one. Its effect was to change the whole character of the deed. By the alteration, the deed, which was the

deed of *Henneberry* personally, became the deed of William Powers, his principal.

The alteration being a material one, if it was made by O'Meara, or by some other person with his knowledge or consent, or if made by any grantee of O'Meara whilst he claimed title under O'Meara and before parting with such title, or with the knowledge or consent of such grantee whilst so claiming title, it destroyed the covenants in the deed; unless it be further shown that such alteration was made with the knowledge and assent of *Henneberry*, or that he assented thereto after acquiring knowledge that such alteration had been made. *Matteson v. Ellsworth*, 33 Wis., 488; *Waring v. Smyth*, 2 Barb. Ch., 119, 125; *Davidson v. Cooper*, 11 M. & W., 800; *Withers v. Atkinson*, 1 Watts, 236; *Chessman v. Whittemore*, 23 Pick., 231; 2 Parsons on Contracts, 724. Such alteration did not, however, destroy or divest any estate which may have vested in the grantee at the date of its delivery; it only renders the deed so far void that no action can be maintained on any of the covenants contained therein, by any party to the alteration; nor can such party avail himself of such covenants to protect or perfect his title under the deed. *Barrett v. Thorndike*, 1 Greenl., 73; *Smith v. McGowan*, 3 Barb., 404; *Bolton v. Bishop of Carlisle*, 2 H. Bl., 259; *Lord Ward v. Lumley*, 5 H. & N., 87, 656; *Alexander v. Hickox*, 34 Mo., 496. It is probable, therefore, that the record of the deed, and perhaps the deed itself, might be received in evidence, notwithstanding the alteration, for the purpose of showing that title had actually passed under it before its alteration. See *Lord Ward v. Lumley* and *Alexander v. Hickox, supra*. But when, on the production of the deed, the alteration is apparent, and remains unexplained, the deed and the record thereof become entirely ineffectual to prove the continuing existence of the covenants contained therein. The introduction of the record, which does not show the alteration, proves nothing when the original is produced and the alteration appears:

North vs. Henneberry and others.

the case must then stand and be tried as though the original had been first offered in evidence, instead of the record. The alteration appearing on the production of the original, the burden of proof was on the plaintiff to explain the same; and unless he can show that it was made without his knowledge or consent, or that it was made with the assent of the party sought to be bound by its covenants, or that the same was assented to after he had knowledge of the alteration, he cannot recover in this action.

As the evidence in this case shows conclusively that the alteration was made after the execution and delivery of the deed, it is unnecessary to discuss the question, whether the same rule as to the burden of proof shall be applied in regard to alterations and erasures appearing upon the face of a conveyance of real estate, which was applied by this court to promissory notes and other negotiable instruments for the payment of money, in the case of *Page v. Danaher*, 43 Wis., 221. In the case at bar, the alteration was shown to have been made after the delivery; it became, therefore, the duty of the plaintiff, who claimed under it, to show that such alteration was made without his fault or the fault of those under whom he claimed, or that it was made with the assent of *Henneberry*, the party to be charged by the covenants contained therein. These are purely questions of fact, and if the case shows any evidence from which the jury might fairly infer that such alteration was made by a stranger, without the knowledge or assent of the grantee or of those claiming under him, or that it was made with the assent of *Henneberry*, given either at the time or after the same was made, the case should not have been taken from the jury

Without expressing any opinion as to whether the case discloses any evidence upon these questions which rendered it improper for the court to take the case from the jury, we are of the opinion that the court erred in rejecting the evidence of the proceedings in the partition case, as bearing upon these

questions; and we do not think the offer was made in such form as to preclude its admission as evidence tending to show that *Henneberry* assented to the alteration, either at the time it was made, or after he had full knowledge of the same.

*Henneberry* testifies that he discovered the alteration had been made in the deed, after he returned to *Eau Claire*; that he left this state shortly after the deed was executed, and did not return until November or December, 1865; that immediately after his return, he found this deed amongst other papers in his wife's possession, and then noticed the alteration. The evidence further shows that on the 23rd of April, 1865, O'Meara, the grantee in the deed, conveyed the premises to Joseph Hadley; that for some reason *Henneberry's* wife, on the 21st of April, 1865, also conveyed these premises to Hadley; and that both these conveyances were recorded August 8, 1865. The proceedings in the partition suit, offered in evidence, were dated nearly two years after *Henneberry* had full knowledge of the alteration of the deed; and still in those proceedings *Henneberry* swears that the grantee of O'Meara owned the undivided half of these lots; and the record does not show that, after the discovery of the alteration, he made any complaint about the matter to any one.

If it be objected that when these proceedings were first offered in evidence, there was no proof showing that *Henneberry* had any knowledge of the alteration at the time he commenced the partition proceedings, the record shows that they were again offered and rejected after the evidence showing such knowledge had been given.

This evidence certainly tends to prove that *Henneberry*, after knowledge of the alteration, assented to the same as lawfully made, and treated the deed as having conveyed the undivided half of the premises to O'Meara, either by way of estoppel or otherwise. It was pertinent evidence, and its weight was for the consideration of the jury under proper instructions from the court.

This court has held in several cases, that an instrument under seal may be altered by the parol consent of the party to be bound thereby. *Van Etta v. Evenson*, 28 Wis., 33; *Vliet v. Camp*, 13 id., 198; *Kilkelly v. Martin*, 34 id., 531. In the last case cited, it was held that the subsequent assent to a material alteration of a written instrument by the party to be charged therewith, was a waiver of his right to rely upon such alteration as a defense to an action brought upon such altered instrument. See also *Humphreys v. Guillow*, 13 N. H., 385; *King v. Bush*, 36 Ill., 142; *Collins v. Makepeace*, 13 Ind., 448; *Kennedy v. Lancaster Co. Bank*, 18 Pa. St., 347.

For the error in rejecting this evidence the judgment of the circuit court must be reversed, and a new trial awarded.

*By the Court.* — So ordered.

RYAN, C. J., and LYON, J., took no part.