## PEABODY vs. LEACH and others.

P., having a contract in his own name for the purchase of land on which a mill was being erected, represented to F. that the land was in fact owned by C., and that he was erecting the mill as C.'s agent, and thus induced F. to furnish materials for the mill on the credit of C., and afterwards, by similar representa-

tions, induced F. to file his claim for a lien, and to enforce his lien by action, against C. alone. The premises having been sold under the judgment in said action, to F., who subsequently executed a deed of the land for a valuable consideration to K. & S. while it was still in the actual possession of P., and P. having sued K. & S. for a trespass upon said premises, alleged to have been committed after they took their deed: *Held*, that P. was estopped, as against F. and those claiming under him, from denying the title of C., or that he held possession as C.'s agent, and not in his own right.

Such estoppel was not prevented by P.'s having stated to F., before the latter furnished said materials, that he had taken the contract for the sale of the land in his own name; it appearing that all his statements were consistent with the supposition that C.'s title was evidenced by a separate conveyance in writing, or that P. had assigned the contract to him.

*Held*, further, that P., having entered as C.'s agent, must be deemed to have held the possession not adversely but in subordination to the title of C. and those claiming under him.

*Held*, therefore, that the deed from F. to K. & S. was not void under sec. 7, ch. 86, R. S.

Where one deposes that he has taken a contract for a deed in his own name, but for the use of another, the proper, and, *it seems*, the legal interpretation of this language is, that the use is expressed in the body of the contract.

APPEAL from the Circuit Court for *Juneau* County.

Trespass to the close, commenced in the circuit court for Columbia county, and transferred to the Juneau circuit court for trial. The premises were certain lots in Kilbourn City, which it is alleged belonged to and were in the possession of the plaintiff, and the trespass charged consisted in breaking and entering the close, and tearing out and removing from a steam saw mill thereon a boiler, engine, machinery and fixtures, which the defendants carried away and converted to their own use. Answer, that at the time of the alleged trespass, the defendants *Kingsbury* and *Samuel Shorey* were the owners of the premises, having purchased them at a sale on execution, under a judgment of the Columbia circuit court, in an action brought by one Foote against one Clark to enforce a lien for materials furnished by Foote to said Clark for the erection and construction of said saw mill and machinery. As to Clark's title prior to said sale, the answer avers that on the 28th of June, 1857, the lots belonged to the Wisconsin River Hydraul-

ic Company; that on that day Clark, through the plaintiff as his agent, entered into a contract under seal with said company for the purchase of said lots, the company executing the contract as party af the first part, and the plaintiff as party of the second part; that the plaintiff had in fact no interest therein, but took the contract in his own name instead of the name of Clark, his principal, for some reason to the defendants unknown; that by said contract Clark was to make the company certain specified payments, and the party of the second part was to erect a steam saw mill, &c. After setting forth at length the conditions of the contract, the answer avers that, immediately after its execution, Clark made the requisite payments, and went into possession of the premises, and erected said saw mill, and performed all the other conditions of the contract required of the party of the second part, and continued in the use and occupation of the mill and premises; that while he was engaged in building said mill &c., he contracted with Foote for certain specified materials, to enforce his lien for which the above mentioned suit of *Foote v. Clark* was brought. After setting forth at length the proceedings and judgment in said suit, and the sale of the premises therein to Foote, and the subsequent purchase of the same from Foote by defendants *Kingsbury* and *Samuel Shorey*, the answer alleges that while Foote was furnishing said materials, and for a long time prior and subsequent thereto, the plaintiff resided at Kilbourn City, and represented to Foote that Clark was the owner of said premises, and the principal owner of the mill then being built thereon, and that he (plaintiff) was his agent; that Foote had no knowledge or belief to the contrary, but relied upon the plaintiff's representations; that during all that time Clark was not a resident of this state, and was not in said county; that Foote was repeatedly assured by plaintiff that Clark would pay for said materials; that Clark neglecting to pay for the same, Foote became anxious about his pay, and applied for it to plaintiff (who

had procured the materials as Clark's agent), and was unable to obtain the pay of him, but was again assured by him that Clark owned said mill and machinery and premises, and thereupon Foote commenced his said proceedings to perfect his lien at the request of the plaintiff herein, and on his unqualified assurance that Clark was owner as aforesaid, and the proper person to be made the principal party defendant and debtor for said bill of materials; that Foote, believing said representations, instituted his said action and perfected his said lien in good faith, and that after the commencement of that action, the plaintiff herein voluntarily appeared as a witness for Foote therein, and gave certain testimony (which the answer sets out at length) in relation to his agency for Clark, and Clark's ownership of the land. The material part of it is stated in the opinion of this court. The answer then alleges that said *Kingsbury* and *Samuel Shorey* purchased said premises, mill and machinery, in good faith, and for a valuable consideration, believing said representations and testimony of the plaintiff to be true; and insists that the plaintiff is estopped from setting up title to said premises adversely to the title so acquired by them.

On the trial, the plaintiff introduced in evidence the contract for the sale of said premises by the Wisconsin River Hydraulic Company, set forth in the answer. He also introduced evidence to show that he was in actual possession at the time mentioned in the complaint, and that the defendants, entered and forcibly removed the articles there described; and also evidence of the damages. The defendants offered in evidence successively, 1. The record in the action of *Foote v. Clark*, referred to in the answer. 2. The testimony (previously taken by consent, subject to objection for irelevancy,) of J. Bowman, who was attorney for Foote in said last mentioned action. The substance of this testimony is given in the opinion. 3. The record of said suit of *Foote v. Clark*, offered a second time, " for the purpose of showing title

to the property in the defendants." 4. The deposition of said *Peabody*, made and read in evidence in said suit. All this evidence was ruled out as irrelevant. J. H. Foote, for the plaintiffs, testified : " I furnished materials for the mill in question as mentioned in the bill of particulars in the suit of *Foote v. Clark*, to the amount of between $50 and $60, ten dollars of which was paid by Harvey Clark. *Mr. Peabody* took most of them away. He told me, at the time he was getting the articles, that he was expecting money from Clark, and as soon as he got it he would pay me. He told me he was furnished means and employed by Harvey Clark to come west and hunt up a mill site. He furthermore told me that he had taken the contract in his own name because Clark had been unfortunate and had creditors, as I inferred. At the time the plaintiff made the affidavit in my suit against Clark, before Mr. Fancher, referee, it was read over to him, and then he took it and read it, and said it was right. He said he did not want to be made a party to that suit, because he was only the agent of Harvey Clark. Mr. Bowman, Fancher, *Peabody* and myself were present when the deposition was made. *Mr. Peabody* swore to the affidavit before Mr. Fancher." On cross examination, witness said : " The plaintiff told me that he had taken a contract in his own name. He did not say that it was for the land. Clark was not there when the account was commenced. I commenced the account on my books against *Peabody* and Clark, and it runs so, but was balanced by a judgment lien against Clark. I charged the articles to them because the plaintiff said they wanted a few things. It was about the time that he got the groceries that he told me that he took the contract. I can't tell the exact time of Mr. Clark's coming there. After he came, he was the party who seemed to take charge of matters. Most of the articles in the bill were delivered before he came ; some were delivered afterwards. I think he was here in the fall. He left the country that fall or winter, after I furnished the goods, and has not returned." The

witness, on being re-examined by defendants' counsel, said: "At the time of the first conversation, I understood from *Peabody* that Clark was in fact the owner of the property."

After the introduction of some further testimony, the court instructed the jury that if they believed the testimony introduced on the part of the plaintiff, he was entitled to a verdict for a sum equal to the damages which, in their opinion from the evidence, he had sustained.

Verdict for the plaintiff, for $1100 ; motion for a new trial overruled ; and judgment upon the verdict; from which the defendants appealed.

*Taylor & Prentiss* and *S. U. Pinney*, for appellants, to the point that the plaintiff was estopped from setting up title to the premises described in the complaint, cited *Dezell v. Odell*, 3 Hill, 219, 221–2 ; *Welland Canal Co. v. Hathaway*, 8 Wend., 483 ; *Hollister v. Johnson*, 4 id., 639 ; *Stephens v. Baird*, 9 Cow., 274; *Pickard v. Sears*, 6 A. & E., 469; *Storrs v. Barker*, 6 Johns. Ch., 166 ; *Ham v. Ham*, 14 Me., 351 ; *Hicks v. Cram*, 17 Vt., 449 ; *Epley v. Witherow*, 7 Watts, 168; *Shapley v. Rangeley*, 1 Woodb. & M., 213 ; *Heard v. Hall*, 16 Pick., 457, 460 ; 2 Am. L. C., 762 ; Willard on Real Estate, 368 ; 2 Washb. on R. P., 458. 2. The question of adverse possession was for the jury and not for the court. Ang. on Lim., 477, and cases cited in note 3. But even if there was an adverse possession by *Peabody* when the deed to *Kingsbury* and *Shorey* was executed, yet the deed was good as a license from Foote to them to enter upon and take possession of the premises, if they would do so in a peaceable manner, which it appears they did. No force either actual or constructive was used until after they had obtained possession. *Edwards v. Roys*, 18 Vt., 473 ; *Livingston v. Proseus*, 2 Hill, 526. The judicial sale and conveyance to Foote was not within the statute avoiding grants on account of an adverse possession. *Jarrett v. Tomlinson*, 3 Watts & S., 114 ; *Frizzle v. Veach*, 1 Dana, 216 ; *Violett v. Violett*, 2 id., 325. But *Peabody*, by his voluntary

written statement, verified by his oath, disclosed the fact that his claim of title was not adverse to Clark, under whom Foote claimed, and is concluded from assuming any other position. He held as agent and not as owner.

*Alva Stewart* and *Emmons Taylor*, for respondent:

The grant from the Hydraulic Company was to the plaintiff at the request of Clark, and, under our statute, this made the plaintiff the owner, even though Clark paid the consideration. R. S., ch. 84, secs. 3, 7, 8, 9; *Garfield v. Hatmaker*, 15 N. Y., 475; *Sturtevant v. Sturtevant*, 20 id., 31; *Rasdall's Adm'rs v. Rasdall*, 9 Wis., 379. The plaintiff was not estopped. He had never misled Foote or his counsel by any misstatement of fact. He told Foote that the contract was in his name. The statement that Clark was the owner was a statement of a conclusion of law, which creates no estoppel. *Brewster v. Stuker*, 2 Coms., 19; 4 Kent's Comm. (9th ed.), 287, note 1; *Freeman v. Cooke*, 2 Wels. H. & G., 653; *Den v. Baldwin*, 1 Zab., 403; 4 Sandf. (S. C.), 361; *Copeland v. Copeland*, 28 Me., 525. 3. The deed from Foote to the defendants was properly ruled out, because the plaintiff was in possession, claiming title adversely to Foote, at the time of its execution. R. S., ch. 86, sec. 7. 4. The deposition of *Peabody* was no part of the record in the lien suit. It was not properly taken to make it evidence (*Fisk v. Tank*, 12 Wis., 276, 299, 300); and if it had been, a party cannot, by attaching evidence to the judgment roll, make it a part of the record. Nor was it evidence as the admission of the plaintiff.

*By the Court*, DIXON, C. J. We think, notwithstanding the ingenious argument of the counsel for the plaintiff, that the testimony of Foote, the deposition of Bowman, and the record of the action of *Foote v. Clark*, establish a clear case of estoppel against the plaintiff, and that the deposition and record should have been received in evidence. Especially do we think this of the deposition of the plaintiff contained in the

record of *Foote v. Clark.* The argument against the estoppel is, that although the plaintiff represented to Foote and Bowman that Clark was the owner of the premises, yet, as he at the same time disclosed to them the relations existing between himself and Clark, showing that he was the trustee of an illegal or void trust, and that Clark had no interest which could be enforced either at law or in equity, there was in fact, and could have been, no deception. Hence it is urged, that if Foote, or his attorney Bowman, were misled, it was because of their own misapprehension of the law applicable to the facts, and not of the statements of the plaintiff that Clark was the owner, which, says the counsel, were but the statements of an erroneous conclusion of law, that ought not to have deceived any person having the same knowledge of the facts as himself. If this were so—if Foote and Bowman had been fully apprised of the facts showing that Clark had no interest, legal or equitable, in the contract, or the land, then we should not be much inclined to differ with the counsel. But we do not think that the plaintiff's statements will bear this construction. On the contrary, we are of opinion that they are fairly susceptible of the opposite construction, that Clark's interest was valid and binding; and we think it more reasonable and just that they should be so construed. Foote testifies that the articles, to recover the price of which the lien was filed and the action instituted against Clark, were bought by the plaintiff for Clark; that the plaintiff represented himself as Clark's agent, and said that he had taken the contract in his own name because, as he, Foote, inferred, Clark had been unfortunate and had creditors; but that Clark was in fact the owner of the property. Bowman deposes that he was about to commence the action for Foote, and, learning that the contract was with the plaintiff, he applied to him to know who would be the proper parties defendant. The plaintiff informed him that he (plaintiff) "had an interest there for his services, but that he purchased the property for Harvey Clark, as his agent; that he took the property in his

own name at the request of Mr. Clark. He told me that Harvey Clark was the owner of the premises, and he was building the mill for him, and that he, the plaintiff, had a claim for his services. The plaintiff was not made a party because he disclaimed any ownership ; said the property belonged to Harvey Clark, and desired me not to make him a party." The deposition of the plaintiff in *Foote v. Clark* is still more explicit. After deposing to his agency, and that he bought the goods of Foote for Clark, the plaintiff says : " I was also the agent of said Clark some time previous to the month of June, 1858, and as such agent, and by authority derived from him, the said defendant, I purchased for said Clark the village lots I have just mentioned of the Wisconsin River Hydraulic Company, for the purpose of erecting said mill thereon, and upon which lots afterwards said mill was erected ; and at the request of said Clark, I took a contract for a deed of the lots I have mentioned, of the said company in my own name, but for the use of Clark, and for the purpose I have stated." He then proceeds to testify that he knows that Foote sold the articles to Clark, and that they were used in the construction of the mill, &c. Thus we find him constantly affirming that Clark was the owner, and finally sanctioning that affirmation by the solemnity of his own oath. Honesty requires, as to Foote and those claiming under him, that he should now be held to that affirmation, unless, as is urged, Foote, by himself or through his attorney, Bowman, was fully informed of the facts showing that Clark was not the owner. The tendency of the courts of late has been to favor the utility of the doctrine of estoppel, where injustice or mischief might otherwise ensue, rather than to retard or restrict it. *Doe v. Oliver,—Duchess of Kingston's Case*, 2 Smith's L. C., 620, note. It is to be observed that the plaintiff did not exhibit to Foote or Bowman the contract between himself and the Hydraulic Company ; nor does it appear that it was accessible to them. He did not inform them how it was that Clark was the owner. He did not say to them that

Clark was not named in the contract as the party beneficially interested; nor that his interest was not declared by a separate instrument in writing; nor that the contract had not been assigned to him. Clark might have been in fact and in law the owner, in either of these ways; and the statements of the plaintiff were not inconsistent with the supposition that he was. If we take his statement to Foote that he was the agent of Clark, and that he took the contract in his own name because Clark was embarrassed, but that Clark was the owner, and if this statement may be deemed inconsistent with the idea that Clark was named in the contract as the party to be benefitted, still it is entirely consistent with the supposition that Clark's title was evidenced by a separate instrument in writing, or that he had assigned the contract to Clark, which transactions were a secret between himself and Clark. There are many fraudulent and concealing debtors having sufficient skill and accuracy in the law to protect themselves by such measures; and the plaintiff seemed anxious not to lay open fully the relations subsisting between him and Clark. If he saw fit not to communicate the facts, but to rest his rights upon the broad assertion that Clark was the owner, he ought not now to complain that he was taken at his word. To have presented the question argued by his counsel, his declarations must have been full, clear and explicit, enough so to have raised the same question in a court of law. He could not, by disclosing in part and in part concealing the facts, evade the inquiries of Foote, and induce him to act under an impression which, whether intended or not, was certainly false, provided Clark was not in truth the owner, and then, when it is too late for Foote to remedy himself, turn around and take advantage of such false impression to Foote's injury. The same observations are true of his declarations to Bowman. They were equally calculated to deceive and mislead, and it is difficult to perceive why he should not be concluded, the same as if he had disclaimed in a court of justice. Again, if we look at the statement in the deposi-

tion in *Foote v. Clark*, we shall see that it involves the same implication that Clark was the lawful owner.    He says he took a contract for a deed in his own name, *but for the use of Clark.* The proper, and, we think, the legal, interpretation of this language is, that the use was expressed in the body of the contract; and if so, the statute then and now in force (R. S., ch. 84, sec. 3) immediately annexed the use to the estate, and Clark became at once the equitable owner of the land and legal holder of the contract.

It seems to us, therefore, from every point from which the question can be examined, that the estoppel was clearly established.

The question of the plaintiff's adverse possession at the time of the conveyance from Foote to *Kingsbury* and *Shorey*, stands upon the same ground.    If the plaintiff is estopped from denying the title of Clark, and his own agency, he is also estopped from denying the possession of Clark.    Having entered as agent, and not in his own right, his possession was that of his principal ; and he must be deemed as holding, not adversely, but in subordination to the title of his principal and those claiming under him.    This principle of estoppel is fully illustrated by several authorities cited in *Lawton v. Howe*, 14 Wis., 247.    The plaintiff, if he desired to claim adversely, should first have surrendered the possession acquired by him as agent, and then if he had entered, he could have done so.

Judgment reversed, and a new trial awarded.