KNAUF & TESCH COMPANY, Appellant, vs. ELKHART LAKE SAND & GRAVEL COMPANY and others, Respondents.

*April 9—April 29, 1913.*

*Estoppel: Passing of title to land: Fraud by agent: Pointing out boundaries which include his own land: Statute of frauds: Equity: Retaining jurisdiction: Remedy at law.*

1. The familiar principle of estoppel *in pais* whereby the title to land of one who has fraudulently induced a person to buy it as the property of another is taken from him and vested in such purchaser, if otherwise, without want of due care on his part, the latter would be pecuniarily injured, applies to the case of an agent of a corporation who, while negotiating the sale of land of the corporation, points out boundaries which include land of his own.

2. Estoppel by covenant and estoppel *in pais* are clearly distinguishable, but each, operating in its appropriate sphere, is as effectual as the other to pass the title to real estate.

3. The doctrine of the transfer of the title to land by estoppel *in pais* does not violate the statute of frauds, which is the weapon of the written law to prevent fraud, not an instrumentality to enable the evil-disposed to perpetrate fraud.

4. A court of equity has very broad power in respect to disposing of the entire controversy appearing from the pleadings and evidence, whether legal or equitable relief, or both, be required; and where an action in equity is brought in good faith, it should not be dismissed upon its appearing that there is no sound basis for other than legal relief, merely because the facts were known to the plaintiff in the beginning, especially where no objection was made by answer or demurrer to the court's dealing with the matter.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action for equitable relief, establishing title to certain real estate in plaintiff and remedying the wrong complained of.

The issues raised and the nature of the evidence are shown by the following abridgment of the findings:

April 17, 1911, negotiations were begun between *Garvens,*—secretary, treasurer, and principal stockholder of the defendant *Gravel Company,*—and the president and vice-president of the plaintiff, as to a sale by such company of its real estate and property to plaintiff; such property being then used by the former for the excavation and sale of gravel, which business, the latter, to the *Gravel Company's* knowledge, intended in case of purchase to continue. The *Gravel Company's* land consisted of about thirty-eight acres describable as the south half of the northeast quarter of section 29, town 16, range 21 east, Sheboygan county, Wisconsin, northerly of the northerly boundary of the right of way of the Chicago, Milwaukee & St. Paul Railway Company, except a strip 100 feet wide off from the north side of the southwest quarter of said northeast quarter and extending 100 feet into the southeast quarter of the northeast quarter. The excepted part was used in common with the rest by the *Gravel Company,* but it belonged to *Garvens,* which, however, was unknown to plaintiff. For aught it knew, all belonged to such company. Such part is the land in controversy. It was bounded on the north substantially by fence. The forty on the north of the east part of the *Gravel Company's* land was owned by Murphy, an officer of the company, but plaintiff supposed *Garvens* had some interest therein though he said nothing about his having any interest in any land south of the fence of any which plaintiff's agents examined as *Gravel Company's* land, which included all but the Murphy forty. *Garvens* solicited such agents to buy all the holdings. The diagram on page 308 shows the situation as it existed in fact.

Plaintiff's agents, during the negotiations with *Garvens,* representing the *Gravel Company,* examined what was understood to be the latter's holdings, which included the 100-foot strip.    Into such strip the *Gravel Company's* operations had extended in excavating gravel for sale.    While the parties were exploring the premises *Garvens* pointed to the fence as the north boundary, saying nothing as to his having any individual interest south of it.    Relying thereon, April 18th, thereafter, plaintiff contracted in writing to acquire the *Gravel Company's* property for $4,500, the business being done in behalf of the latter by *Garvens* and Murphy.    In the written contract the property dealt with was thus described:

"The lands known as the *Elkhart Lake Sand & Gravel Company's* sand and gravel pit, consisting of about thirty-eight acres of land situated in the county of Sheboygan, state of Wisconsin, together with the personal property, tools, and equipment needed to operate the same as it has been operated by us."

April 21st, thereafter, for his company, *Garvens* delivered to Knauf, for plaintiff, an abstract and conveyance with other papers in execution of such contract, representing that such conveyance included the lands agreed upon.    The papers were received for examination with the understanding that another paper, showing corporate authority to sell, would be furnished and that plaintiff should decide upon the sufficiency of the deed later.    That was consented to by *Garvens,* but for accommodation of his company plaintiff then paid the purchase money.    The lands were described in the conveyance thus:

"The following described real estate situated in Sheboygan county, state of Wisconsin, to wit: beginning one hundred (100) feet due east of the northwest corner of the southeast quarter ($\frac{1}{4}$) of the northeast quarter ($\frac{1}{4}$) of section No. twenty-nine (29) in township No. sixteen (16) north, of range No. twenty-one (21) east, and running thence east twelve hundred and eighty-nine hundredths (1200.89) feet to the northeast corner of said southeast quarter ($\frac{1}{4}$), thence

due south to the southeast corner of said southeast quarter ($\frac{1}{4}$), thence due west six hundred seventy-six (676) feet to the east line of the right of way of the Chicago, Milwaukee & St. Paul Railway, thence northwesterly along said right of way to the west line of said southeast quarter ($\frac{1}{4}$), thence due north five hundred forty-three (543) feet to a point one hundred feet south of the northwest corner of the said southeast quarter ($\frac{1}{4}$), thence due east one hundred (100) feet, thence due north one hundred (100) feet, to the place of beginning, containing 33.77 acres of land.

"Also that part of the southwest quarter ($\frac{1}{4}$) of the northeast quarter ($\frac{1}{4}$) of said section lying northeast of the right of way of the Chicago, Milwaukee & St. Paul Railway, excepting the north one hundred (100) feet, and described as follows:

"Beginning one hundred (100) feet due south of the northeast corner of said southwest quarter ($\frac{1}{4}$) and running thence west parallel with the north line of said southwest quarter ($\frac{1}{4}$) seven hundred eighty-two (782) feet, more or less, to the east line of the right of way of the Chicago, Milwaukee & St. Paul Railway, thence southeasterly along said right of way to the east line of said southwest quarter ($\frac{1}{4}$), thence due north five hundred forty-three (543) feet to the place of beginning, and containing 4.87 acres of land."

A careful examination of the conveyance and abstract would have disclosed that the premises in controversy were not included in the deed or according to the representations made leading up to the contract, nor to such contract, as plaintiff understood it in the light of such representations and that the *Gravel Company* never owned the strip. Such careful examination was omitted by consent of *Garvens,* because Mr. Knauf was required, for the time being, to give attention to sick relatives. Some few days thereafter, and before plaintiff had made the full examination of the papers contemplated, Murphy endeavored, as *Garvens* had before ineffectually, to have plaintiff purchase his forty; threatening that, if it did not, there would be competition in the gravel business; the 100-foot strip in controversy, which he then

asserted belonged to *Garvens,* being used in reaching shipping facilities.    That was the first intimation to plaintiff that the deed did not describe the 100-foot strip.    Therefore, pursuant to the understanding had when the contract was made, plaintiff took possession of what it supposed was the *Gravel Company's* property, described in the land contract, and has ever since remained in such possession, carrying on the gravel business.    Seasonably after the intimation aforesaid, plaintiff discovered the facts and demanded conveyance of the disputed premises, which was refused.    Under the circumstances plaintiff was not negligent in failing to discover the true state of things earlier than it did.    May 11th, after the transactions aforesaid, *Garvens* notified plaintiff in writing to vacate the strip.    Murphy then negotiated with defendant *Feldmann* to sell it with his forty, resulting in the latter arranging to take such property and transfer the strip to defendant *Laun* for $700; both *Feldmann* and *Laun* having knowledge of plaintiff's occupancy and claim to have purchased the strip supposing it was a part of the *Gravel Company's* property, described in the contract.    *Feldmann* and *Laun* caused the records to be examined, resulting in confirmation of Murphy's claim that the title to the strip was in *Garvens* and never had been in the *Gravel Company.*    Relying thereon and the representations by Murphy that *Garvens* owned the strip, *Feldmann* purchased it with the Murphy forty, taking the paper title thereto.    May 16th, thereafter, he conveyed the strip to *Laun.*    Neither of the parties made any inquiry of plaintiff's officers in respect to their claim to the property.    A few days later *Laun* and others formed the defendant *Concrete Company* which, June 22d thereafter, acquired paper title to the disputed strip.    All the deeds vesting the record title in the *Concrete Company* were duly recorded.    *Feldmann* and the parties who formed the *Concrete Company* did not combine to defraud plaintiff.    They acted in the belief that Murphy's claim as to the plaintiff not having any right to the disputed

premises was true and upon the record title. *Garvens,* in the transactions with plaintiff, acted solely for the *Gravel Company,* making no representations in his own behalf.

On such facts the court concluded that plaintiff was not entitled to hold the *Garvens* land because he acted solely for his company, and that the cause could not properly be retained for legal relief because plaintiff knew the facts when the action was commenced.

Judgment was ordered for defendant on the grounds stated in the opinion referred to. There were no conclusions of law embodied in the paper filed in execution of the statutory requirements for findings of fact and conclusions of law to be filed by the trial judge. In place thereof, and denominated "conclusions of law," there was an order dissolving a temporary injunction granted at the commencement of the action, and an order for judgment dismissing the action on the merits, each party to pay its or his own costs.

Exceptions were filed requisite to save for review the questions discussed in the opinion.

For the appellant there was a brief by *J. E. McMullen,* attorney, and *Simon Gillen,* of counsel, and a reply brief and oral argument by *Mr. McMullen.* They argued that the defendant *Garvens* acted in his individual capacity as owner of the land in question, and not merely as agent of the corporation. *Hubbard v. Oliver* (Mich.) 139 N. W. 77; *Kipp v. Laun,* 146 Wis. 591, 131 N. W. 418. Upon the question of estoppel they cited, among other authorities, *Norton v. Kearney,* 10 Wis. 443; *Vilas v. Mason,* 25 Wis. 310; *McLean v. Dow,* 42 Wis. 610; *Kingman v. Graham,* 51 Wis. 232, 8 N. W. 181; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78 N. W. 440; *Smith v. Willing,* 123 Wis. 377, 101 N. W. 692; *McCord v. Hill,* 117 Wis. 306, 94 N. W. 65; *Williams v. J. L. Gates L. Co.* 146 Wis. 55, 130 N. W. 880; *Mariner v. Milwaukee,* 146 Wis. 605, 131 N. W. 442; *Harley v. Harley,* 140 Wis. 282, 122 N. W. 761; *Appleton Mfg. Co. v. Fox River P. Co.*

111 Wis. 465, 87 N. W. 453; *Kirk v. Hamilton,* 102 U. S. 68; *Strasser v. Goldberg,* 120 Wis. 621, 98 N. W. 554; *Wis. O. L. Co. v. Laursen,* 126 Wis. 484, 105 N. W. 906; *Lyndon L. Co. v. Sawyer,* 135 Wis. 525, 116 N. W. 255; *Kimball v. Baker L. & T. Co.* 152 Wis. 441, 140 N. W. 47. As to the power of the court to retain jurisdiction to administer suitable relief: *Fleming v. Ellison,* 124 Wis. 36, 102 N. W. 398; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Franey v. Warner,* 96 Wis. 222, 71 N. W. 81; *Luetzke v. Roberts,* 130 Wis. 97, 109 N. W. 49; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75; *Grant M. Co. v. Abbot,* 142 Wis. 279, 124 N. W. 264; *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532; *Rock Co. v. Weirick,* 143 Wis. 500, 128 N. W. 94. The land in question was a part of the gravel pit sold, actually in use as such, and passed to the grantee even though the title stood in the individual name of *Garvens. Van Horn v. Richardson,* 24 Wis. 245; *Green Bay & M. C. Co. v. Hewitt,* 66 Wis. 461, 29 N. W. 237; *Cox v. Howell,* 108 Tenn. 130, 65 S. W. 868, 58 L. R. A. 487 and notes; *Wilson v. Hunter,* 14 Wis. 683.

*H. J. Rooney,* for the respondents *Elkhart Lake Sand & Gravel Company* and *Garvens,* contended that specific performance could not be enforced against the corporation because it never had title, nor against *Garvens* because he never contracted to convey. 4 Pomeroy, Eq. Jur. (3d ed.) § 1405; *Bardon v. Hartley,* 112 Wis. 74, 87 N. W. 809; *Auer v. Mathews,* 129 Wis. 143, 108 N. W. 45; *Schneider v. Reed,* 123 Wis. 488, 101 N. W. 682; *Park v. M., St. P. & S. S. M. R. Co.* 114 Wis. 347, 89 N. W. 532. Equity will not retain jurisdiction to award damages where the facts were all known to plaintiff when he brought the suit. 1 Pomeroy, Eq. Jur. (3d ed.) § 237; *Luetzke v. Roberts,* 130 Wis. 97, 109 N. W. 49; *Park v. M., St. P. & S. S. M. R. Co., supra; Rock Co. v. Weirick,* 143 Wis. 500, 128 N. W. 94; *Franey v. Warner,* 96 Wis. 222, 71 N. W. 81.

*Francis Williams,* for the respondents *Feldmann, Laun,* and *Elkhart Sand & Concrete Company.*

MARSHALL, J.   The appeal presents this for solution: If
an agent induces another to contract for the purchase of the
principal's land by fraudulently pointing out its boundaries
so as to include land of his own, and such other is let into
possession accordingly and, later, such agent hands such other
a deed and abstract, careful examination of which would dis-
close the facts, but it is reasonably delayed, the purchase
money being as matter of accommodation paid in advance
thereof, and such other within a reasonable time discovers
such facts, insists upon having the omitted part and is not
barred of right thereto by negligence, and the agent there-
after, by successive conveyances, causes title thereto to be
vested in a distant party, each concerned having knowledge, or
reasonable means of knowledge, of the truth,—may such per-
son efficiently claim it and have relief in equity to confirm
title thereto in him of record?

The trial court ruled in the negative, since, as was supposed,
an agent cannot lose title to his land by estoppel because of
having fraudulently represented it as the property of his prin-
cipal in conducting a sale of the latter's property, not re-
ferring to any authority, elementary or judicial, in support
thereof.   There is none of which we are aware.   On the con-
trary, the inquiry seems to be plainly ruled in the affirmative
by the familiar elementary principle of estoppel *in pais* by
which title to the land of one who has fraudulently induced a
person to buy the property as that of another, is taken from
him and vested in such person, if otherwise, without want of
due care on his part, he would be pecuniarily injured.

In general, he who in dealing with another negligently or
designedly misrepresents the facts, or, when he ought to
speak, omits to disclose the truth for the purpose of inducing
such other to, or with reasonable ground to expect he will,
change his position in reliance thereon, is estopped to assert
the truth to such other's injury.   *Two Rivers Mfg. Co. v.
Day,* 102 Wis. 328, 78 N. W. 440; *Frels v. Little Black F.*

*M. Ins. Co.* 120 Wis. 590, 98 N. W. 522; *Marling v. Nommensen,* 127 Wis. 363, 106 N. W. 884. The rule has no such infirmity that an agent can fraudulently represent his own property as that of his principal, and induce a purchase by means thereof, and then escape from losing what he so misrepresented because of his having falsified while acting as agent. The doctrine of estoppel penalizes for the wrong and so as to effectually remedy it as practicable. In a case of the sort before us, from the very logic of the principle, it bears on the person committing the fraud and those claiming under him with knowledge, as the only way of affording, as to the person wronged, the very thing which the wrongdoer fraudulently represented such person would obtain by dealing as he proposed. The instrumentality operates in favor of the one who has been misled though the fraud,—acts upon the wrongdoer and any one responsible for the mischief, *respondeat superior,* or because of ratification, and it is effectual to take title to land from one and vest it in another, where justice requires that to be done. It is a rule of last resort, but, as said in *Marling v. FitzGerald,* 138 Wis. 93, 101, 120 N. W. 388, when it is aroused into activity:

"It stays the operation of other rules which have not run their course [with the possible exception of the statute of limitations], when to allow them to proceed further would be a greater wrong than to permanently enjoin them. It is a rule of justice which, in its proper field, has a power of mastery over all other rules," that it is "entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice which the equity of the law affords."

Many illustrations are found in our own books of the application of the doctrine of estoppel *in pais* to change title to realty from one person to another to save the latter from the consequences of the former's fraudulent representations on the faith of which such other acted. The following are a few of them: *Peabody v. Leach,* 18 Wis. 657; *North v. Henneberry,*

44 Wis. 306; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78
N. W. 440; *McCord v. Hill,* 117 Wis. 306, 94 N. W. 65;
*Mariner v. Milwaukee,* 146 Wis. 605, 131 N. W. 442. In
*Kingman v. Graham,* 51 Wis. 232, 8 N. W. 181, it was dis-
tinctly held that one may lose title to his land to another by
active fraud, but not by mere silence with no more than a
mere moral obligation to speak, quoting this from *Brant v.
Virginia C. & I. Co.* 93 U. S. 326:

"And it would seem that to the enforcement of an estoppel
of this character with respect to the title of property such as
will prevent a party from asserting his legal rights, and the
effect of which will be to transfer the enjoyment of the prop-
erty to another, the intention to deceive and mislead, or neg-
ligence so gross as to be culpable, should be clearly estab-
lished."

This case would satisfy, fully, the aggravated characteris-
tics thus mentioned though later authorities seem to indicate
that, to designedly or inexcusably mislead another is sufficient,
as in *Two Rivers Mfg. Co. v. Day, supra,* and *Mariner v. Mil-
waukee, supra.* There the more modern doctrine, as gathered
by text-writers from the trend of judicial administration, was
adopted. 2 Pingrey, Real Prop. § 1220. One should not be
misled, in a case of this sort, by failing to distinguish between
estoppel by covenant and estoppel *in pais.* Each operates in
its appropriate field and is quite as effectual as the other, as
indicated in *North v. Henneberry, supra.*

It is suggested that the doctrine aforesaid is in violation of
the statute of frauds when applied to real-estate titles. Not
so, as uniformly held. The statute of frauds was not de-
signed to enable the evil-disposed to possess an instrumen-
tality with which to perpetrate fraud. It is the weapon of
the written law to prevent fraud while the doctrine of estop-
pel is that of the unwritten law to prevent like evil. Each is
effective in its appropriate field. Both are essential to pre-
vent and redress wrongs. Courts elsewhere, as well as our
own, have uniformly dealt with this subject as not impairing

the integrity of the statute in case of the taking of title to realty from one and vesting it in another being necessary to prevent the latter from suffering loss in consequence of having acted upon that one's false representations. *Bell v. Goodnature,* 50 Minn. 417, 52 N. W. 908; *Richardson v. Chickering,* 41 N. H. 380; *Louks v. Kenniston,* 50 Vt. 116; *Stanwood v. McLellan,* 48 Me. 275. The cases decided here and these authorities well illustrate how effectually the principle of estoppel *in pais* operates in such circumstances as were disclosed in this instance.

If the foregoing were not sufficient to dispose of this case in appellant's favor, a reversal would be necessary because of the trial court having taken too narrow a view of its competency to deal with a situation in equity, upon its appearing that there is no sound basis for other than legal relief, and the facts were known to the plaintiff in the beginning. There is no question, even from the trial court's point of view, but that a cause of action was stated in equity and, if that were not so, yet the action was commenced in the good-faith belief that equitable relief was obtainable on the facts. Moreover, no objection was made by answer or demurrer to the court's dealing with the matter.

The mere circumstance of itself that appellant knew the facts when the action was commenced would not require a dismissal because of facts not being established warranting equitable relief if, notwithstanding, good cause for legal relief was shown. Having properly acquired jurisdiction, in such a case, a court of equity has very broad power to wind up the entire controversy appearing from the pleadings and evidence, whether legal or equitable relief, or both, be required, as the following will show: *Franey v. Warner,* 96 Wis. 222, 71 N. W. 81; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75; *Stevens v. Coates,* 101 Wis. 569, 78 N. W. 180; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Luetzke v. Roberts,* 130 Wis. 97, 109 N. W. 949.

It should not be thought that the facts of any one of those cases clearly indicate the entire scope of the rule. Difficulty often happens from taking the circumstances of some particular controversy as measuring the rule of the decision in respect thereto, instead of the rule merely applying to the facts as it might to many somewhat similar conditions. The principle itself is stated as fully, perhaps, as anywhere in *Gates v. Paul, supra,* thus:

"If one sues in equity in good faith and fails to establish his cause but shows a state of facts entitling him to recover at law, the court, having rightfully obtained jurisdiction for a proper purpose, may retain the cause and grant just such relief as upon the facts the plaintiff appears entitled to, whether at law or in equity."

The different adjudications on the subject are, to some extent, reviewed in *Stevens v. Coates, supra.*

I may be permitted to say for myself, in passing, that where warrant can be found in the Code for dismissing an action, under any circumstances, merely because relief was sought in equity and the nature of the redress warranted by the proven facts is legal only, I have never been able to find. Neither have I been able to appreciate how the practice to the contrary, to any extent, was retained under the Code. We have but one form of action, one form of complaint, one method of forming issues, and one court for the trial thereof. There is no jurisdictional question, in the technical sense, which could arise as to whether a cause of action should be constructively in a court of equity or in a court of law. The court having jurisdiction in one aspect has jurisdiction in the other. In either case the complainant is required in plain and concise language to tell his story, and he is entitled thereon, the facts being established, to just such relief as is appropriate to redress any wrong or vindicate any right which is within the competency of the court to grant. In case the matter requires interference by a jury, it is under the control of the court to give it that direction as matter of administra-

tion.   The cause can be dismissed as to some parties, other parties may be brought in if necessary, and the whole subject dealt with according to the real necessities of the case, as indicated by the facts pleaded and properly established.   Why then need a party entitled to judicial relief of some sort on the pleaded and established facts, be turned out of court without it?

· It follows from what has been said that the judgment appealed from must be reversed and the cause be remanded for judgment in appellant's favor, establishing its title to the disputed premises against all parties to the action and, if necessary, charging the one holding it of record as trustee for plaintiff and requiring a transfer from that one in an appropriate way; that is, by the party or by the court under its equity power in that regard in lieu thereof.

The costs for printing on the appeal must be specially limited because of the case being needlessly long.   No more than $75 can be allowed.

*By the Court.*—The judgment is reversed, and the cause remanded for judgment in appellant's favor as indicated in the opinion.